[Civ. No. 3961. First Appellate District, Division Two.—November 1, 1921.]

## AMANDA E. PITNEY, Appellant, v. GEORGE R. PITNEY et al., Respondents.

[1] DEEDS — ACTION FOR CANCELLATION — INTENT OF GRANTOR — CONFLICT OF EVIDENCE—APPEAL.—Where in an action for the cancellation of deeds the evidence is conflicting on the issue. of the intention of the grantor at the time the deeds were made, the appellate court is not at liberty to disturb the findings.

[2] ID.—DEPOSIT WITH THIRD PARTY—DELIVERY AFTER DEATH—PASSING OF PRESENT TITLE.—A deed placed in the hands of a third party

to be delivered to the grantee on the grantor's death is effective to pass title, if it is the intention of the grantor to make the delivery absolute and to place the deed beyond the power thereafter to revoke or control it.

[3] ID.—INTENT OF GRANTOR—EVIDENCE—UNSIGNED INDORSEMENT ON ENVELOPE.—In an action for the cancellation of deeds, a memorandum indorsed on the envelope containing the deeds, which was made at the grantor's request although not signed by her, is admissible on the issue as to whether the grantor in placing the deeds in the hands of a third party to be delivered after her death intended to make such delivery irrevocable.

[4] ID.—SIGNING BY HAND OF PARTY.—Where a third party signed the grantor's name to a deed followed by the words "her mark" at the grantor's request and the grantor at the same time had a hold on the pen, there was a legal signing by the hand of a party under sections 14 and 1091 of the Civil Code.

[5] ID.—SIGNATURE BY HAND OF ANOTHER.—Where a grantor directed a third party to sign her name to a deed and the same was done in her presence and in the presence of others, there was a legal signing by the hand of another under sections 14 and 1091 of the Civil Code.

[6] ID.—ACKNOWLEDGMENT OF EXECUTION—ADOPTION OF SIGNATURE.—Where a grantor, after she had placed her mark at the end of a deed and her name had been written thereon at her request by a third party, acknowledged to a notary public that she had executed the instrument, such act was an adoption of the signature in its entirety.

APPEAL from a judgment of the Superior Court of Lake County. M. S. Sayre, Judge. Affirmed.

The facts are stated in the opinion of the court.

Benjamin C. Jones and Mannon & Mannon for Appellant.

M. H. Iversen for Respondents.

STURTEVANT, J.—The plaintiff brought an action against the defendants to quiet her title to certain lands in Lake County. In her complaint she named as defendants

2. Efficacy of deed deposited with third person to be delivered after grantor's death, note, Ann. Cas. 1915C, 378, 385, 388.

Right of grantor to revoke deed delivered to stranger to be delivered by him to grantee after grantor's death, notes, 4 L. R. A. (N. S.) 816; 9 L. R. A. (N. S.) 317.

her four children and a grandchild, the daughter of a deceased child of the plaintiff, and she also named H. E. Witherspoon, the former attorney of the plaintiff, and the holder of the deeds · sought to be canceled and annulled. The summons was served on all of the defendants, three of the defendants appeared and answered, but the other defendants neither appeared nor answered, nor was a default entered. The defendants that answered were George R. Pitney, a son, May Foutch, a daughter, and H. E. Witherspoon. On the issues so made the court tried the case sitting with a jury. The jury returned a verdict in favor of the defendants, and brought in five special verdicts: 1. The plaintiff did intend, on October 10, 1916, at the time H. E. Witherspoon took the written instruments, that the said instruments should become immediately operative as deeds. 2. That plaintiff did intend, at the time H. E. Witherspoon took the written instruments, that such instruments should presently pass title to the land described in them. 3. The plaintiff did intend, at the time H. E. Witherspoon took the written instruments, to put it beyond her power to make any other disposition of her land. 4. The plaintiff did intend, at the time H. E. Witherspoon took the written instruments, that said Witherspoon should have actual custody of those papers; and 5. The plaintiff did intend, when H. E. Witherspoon took the written instruments, to part with all future control over said instruments. Thereafter the trial court received and adopted said verdicts as part of its findings, and among other findings the trial court made a finding that the plaintiff did, on the tenth day of October, 1916, deliver the deeds to H. E. Witherspoon and instruct him to hold the said deeds in escrow until her death, and in that event to deliver the said deeds to the several grantees therein named. And the trial court further found that the said deeds were signed, acknowledged, and delivered by the plaintiff to H. E. Witherspoon in escrow with full knowledge of their nature and effect, and with the intent thereby to surrender up all dominion or control over the said deeds forever, and to place them irrevocably beyond her power to recall them, and with the further intent that title to the said lands should immediately vest in the several grantees named in the said deeds, subject only to a life estate therein reserved to her-

self, and thereupon the court entered a judgment in accordance with the said findings. Later the plaintiff moved for a new trial; her motion was denied, and she appealed from the judgment under section 953a of the Code of. Civil Procedure. On this appeal the appellant contends that the deeds were never subscribed by her and, consequently, even though delivered in escrow, were never operative to transfer any title, and, secondly, that the deeds were never delivered and were inoperative because appellant never intended to vest an estate in the grantees or to put it beyond her power to make a subsequent disposition of the property.

On the tenth day of October, 1916, the plaintiff was about seventy-one years of age; she was unable to read or write; her general health was fairly good; at the time the survey was made, about a week before, she was well enough that she was out on the farm and. directed the surveyors as to the lines that should be run. On the day the deeds were made she was indisposed and was in bed, but there is no contention that she was suffering from any severe illness at that time. The testimony produced by the plaintiff and that produced by the defendants is to the effect that the plaintiff was in possession of her mental faculties and freely discussed with her attorney the business in hand. Mr. Witherspoon was called as a witness for the defendants. Among other things he testified that prior to the tenth day of October, 1916, the plaintiff had asked him if she could make deeds to the grantees named and yet retain the possession of the property during her lifetime. He said he explained what was meant by escrow deeds, that she could make deeds in escrow and deliver them to a third party with the intention of passing present title, that such an act would give her a life estate in the property, and, at her death the holder of the deeds would deliver the deeds to the parties she had named and they could record the deeds. That seemed to satisfy her. He also explained to her that the property in her lifetime was hers to use, that she could rent it and farm it, and was entitled to the entire income from the property, and that the property would only come to the possession of the grantees named in the deeds after her death. After that explanation the plaintiff said that was the way she wanted her property fixed. He explained to her that she could not get the deeds back after placing

them in escrow. She said that this was to be her final disposition, she did not want to be bothered any more about dividing her property, she wanted this to be final. He also told her that it would be necessary to obtain descriptions to be inserted in the deeds. Thereupon the services of a local surveyor were obtained, and later the descriptions were delivered by the surveyor to Mr. Witherspoon. On October 10, 1916, Mr. Witherspoon took with him Dr. R. G. Reynolds, a notary public, and Mr. D. W. Dillard, and the three went to the residence of the plaintiff. While there the deeds were finally completed, and then one at a time the same were read to the grantor, and thereupon each one was executed in such a manner that the closing part was as follows: "In Witness Whereof, the said party of the first part has hereunto set her hand and seal the day and year first above written. Amanda E. X̲ Pitney (Seal). Signed, her mark Sealed and Delivered in the presence of witnesses to mark, R. G. Reynolds, D. W. Dillard." Thereupon each deed was acknowledged before Dr. Reynolds as a notary public, and each certificate of acknowledgment is in the ordinary and regular form. Mr. Witherspoon wrote the words, "Amanda E. Pitney her mark." Each deed was placed in a separate envelope and there was written on each envelope an indorsement; the one on the envelope in which the deed to May Foutch was inserted being as follows: "Escrow instructions. I instruct H. E. Witherspoon in whose hands I have deposited a deed to May Foutch, to hold the same during my life and at my death to deliver the same to the said May Foutch, and I hereby declare it is now my intention to have the said deed delivered in escrow to the said Witherspoon for purpose of delivering said deed at my death to the said May Foutch. Amanda E. X̲ Pitney. Witnesses to mark her mark R. G. Reynolds, D. W. Dillard. Oct. 10/16." The signing of the instructions was done in the presence of Dr. Reynolds, Mr. Dillard, and Mr. Witherspoon, and was done in the same manner as the signing of the deeds. Mr. Witherspoon explained the contents of each deed to the grantor before she signed the same, and explained to her the instructions in writing and read the same to her. He testi-

fied: "She was again asked if she understood an escrow deed meant the delivery of a deed to a third party, that she surrendered all future control of the deeds and retained only a life estate in the property, and that that was the effect of the instructions upon the envelope." After the deeds had been so executed and delivered to the witness and inclosed in the envelopes and sealed, the witness and Dr. Reynolds and Mr. Dillard left the house, the witness taking the envelopes and their contents with him, and he has retained the same ever since. On cross-examination he stated that in April, 1918, the plaintiff demanded the possession of the deeds, but that he refused to deliver the same. That was the first dissatisfaction he heard expressed. About October 17, 1916, the plaintiff called on the witness and made a will disposing of her personal property. By that will she divided her personal property, giving different things to her children or to her grandchildren. She inserted a clause that the rest and residue of her property was to be divided among her children.

Mrs. Foutch testified that on the day the survey was being made her mother had stated that she wanted her property disposed of by deed, and that was her final decision. She also testified that she heard the instructions read to her mother and heard her mother assent thereto; that she never heard any dissatisfaction expressed until the spring of 1918, although after the deeds had been executed and before the spring of 1918 she said that her mother had made the remark that the execution of the deeds was a final disposition of the property; she was entirely satisfied and happy, and she was glad to be rid of it and have it off her mind. The defendant George R. Pitney testified that on the morning the survey was made his mother pointed to the land that she was going to deed to him and said, "I am going to make a final disposition so I can't change it if I want to." There is a stream that crosses or borders the lands conveyed to George Pitney and May Foutch. After the deeds had been made the plaintiff directed the attention of Mr. Foutch and of George Pitney to the fact that the stream was cutting the banks, and that it would be necessary for them to protect their respective properties. Thereupon those men entered upon the lands and performed the work in question.

Before the trial of the case Dr. Reynolds had died. The witness above referred to, Mr. Dillard, was called by the plaintiff. He testified, among other things, that in every instance Mr. Witherspoon read over the deed to Mrs. Pitney, after which he asked her if that was her wish; if that was the way she wanted the deed, and afterward she signed it. "As I understand, Mr. Witherspoon signed with her touching the pen." After the deeds had been prepared Mr. Witherspoon asked the plaintiff, "Now, do you want me to take these deeds in escrow and deliver them to the proper parties?" she said, "Yes." He also testified that the instructions were read over to her and that she signed the instructions.

The plaintiff testified that she did not intend to transfer her property; that at the time of the transaction she did not understand the effect would be that she would lose control over the papers; that she supposed she could get the papers back; that, if she had supposed that she was parting with all control over them, she would not have executed the papers; that she did not understand, at the time of the transaction, that if she made the papers and left them with Mr. Witherspoon that immediately Mrs. Foutch and George would become the owners of interests in the ranch.

From what has been stated it appears clearly that the intention of the grantor at the time the deeds were made was the real question put in issue by the pleadings and the proof as introduced by the respective parties, and that it may be conceded that the evidence is conflicting. However, it must also be conceded that there was an abundance of evidence going to support the verdicts and findings. [1] On the issue of intention, this court is not at liberty, therefore, to disturb the findings of the trial court. The appellant cites and relies on the rule stated in *Williams* v. *Kidd*, 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]. That case, however, does not control in this case, because in that case the finding of the trial court was that Williams never intended that his deed should presently pass the title. [2] On the other hand this case is controlled by the rule stated in *Bury* v. *Young*, 98 Cal. 446 [35 Am. St. Rep. 186, 33 Pac. 338]. Referring to that case and similar cases, the supreme court said: "It is well settled that a person may make a conveyance of property and place it in the hands of a third

party to be delivered to the grantee named in it on the death of the grantor, and that such a delivery will be effectual to pass a present title to the property to the grantee, *if the intention of the grantor is to make such delivery absolute and place it beyond the power thereafter to revoke or control the deed.* Where delivery is made under these circumstances and with this intention, it is fully operative and effective to vest a present title in the grantee, the grantor retaining only a life estate in the property and the third party or depositary holds the deed as a trustee for the grantee named in it." (*Williams* v. *Kidd,* 170 Cal. 631, 637 [Ann. Cas. 1916E, 703, 151 Pac. 1].) (Italics ours.) [3] As bearing on the intention of the grantor the memorandum indorsed on the envelope pursuant to the grantor's request was admissible in evidence. No law required the same to be signed. Whether it was so signed as to comply with the requirements of section 14 of the Civil Code is immaterial, but whether signed, or unsigned, the words of the memorandum, the fact it was read to the grantor, and her declarations concerning the same, were all material facts going to prove or disprove intention and all of them were admissible in evidence. (Code Civ. Proc., sec. 1850; Id., sec. 1870, subd. 7.)

[4] It is earnestly contended by the appellant that the signature by mark, as the same was executed, under the foregoing facts does not constitute a legal signature when measured by the calls of the statute. (Civ. Code, sections 14 and 1091.) A signature may be attached (1) by the hand of a party; (2) by the hand of another; and (3) by use of a mark. (36 Cyc. 451.) Mr. Dillard testified that, when Mr. Witherspoon had prepared the papers, Mr. Witherspoon wrote "Amanda E. Pitney, Her Mark," on the request of the plaintiff, and that the plaintiff at the same time had a hold on the pen. Such procedure, standing alone, had, in legal effect, the force of being a signing by the plaintiff. Such a signature falls within the first class. [5] Again, the testimony of the several witnesses called by the defendants was to the effect that when the time to sign arrived the plaintiff directed Mr. Witherspoon to sign her name, which act was done by him in her presence, and in the presence of Mr. Dillard and of Mrs. Foutch. Such act, without regard to any mark,

constituted and was in law the signature of the plaintiff. Such a signature falls within the second class. Our first statement is supported by the ruling in *Harris* v. *Harris,* 59 Cal. 620. The second is supported by the doctrine stated in *Videau* v. *Griffin,* 21 Cal. 389, 392, where the court says: "The only exception to the rule that an authority to execute a deed must be conferred by writing, is where the execution by the attorney is in the presence of the principal. The exception arises from the doctrine that what one does in the presence of and by the direction of another is the act of the latter—as much so as if it were done by himself in person. The attorney in such case, so far as the signature to the instrument is concerned, is a mere amanuensis of the grantor, and in the affixing of the seal is only the instrument, the hand, as it were, of the grantor. It is not sufficient that the attorney was directed to sign the name of the principal and affix his seal; the execution must be in the immediate presence of the principal, and this fact must be affirmatively established by the party who relies upon it as an excuse for the absence of a power in writing." And in *Jansen* v. *McCahill,* 22 Cal. 563, 565 [83 Am. Dec. 84], where the court says: "The name of the wife being written by her daughter in her presence and at her request, made it as much her signature as though it had been written by herself." (*Ball* v. *Dunsterville,* 4 Term Rep. 313; *Gardner* v. *Gardner,* 5 Cush. (Mass.) 483 [52 Am. Dec. 740]; *King* v. *Longuor,* 4 Barn. & Ad. 647; *Frost* v. *Deering,* 21 Me. 156.) In *Blaisdell* v. *Leach,* 101 Cal. 405, 408 [40 Am. St. Rep. 65, 35 Pac. 1019, 1020], the court said: "The Civil Code, section 1091, requires that a grant of real property shall be subscribed by the grantor in order that the title may be transferred thereby, but it is not necessary that the signature of the grantor be affixed by himself. It may be so affixed by another, if done in his presence, and by his own direction (*Gardner* v. *Gardner,* 5 Cush. (Mass.) 483); and he may also adopt and ratify a signature made by another without any previous authority (*Bartlett* v. *Drake,* 100 Mass. 174 [97 Am. Dec. 92]); and the adoption of a forgery has been held to be binding upon the maker of a promissory note. (*Forsyth* v. *Day,* 42 Me. 176; *Greenfield Bank* v. *Crafts,* 4 Allen (Mass.), 447.)" In the case of *Pierce* v. *Dekle,* 61 Fla.

390 [Ann. Cas. 1912D, 1355, 54 South. 389], the supreme
court of Florida was considering the validity of a signa-
ture attached to a paper by the direction of the defendant
who stood by and saw the signature attached. On page 1356
of Ann. Cas. 1912D, the court said: "One of the defendant's
pleas was *non est factum.* The contention being that before
Liddon could have bound the defendant under seal he should
have had authority under seal to so bind him  The rule is well
settled, both in England and in the United States, that an
act done by a person in the presence of another, and by his
direction or with his consent, as the signing or execution of
a sealed or written instrument, for example, *is not regarded
as the act of an agent, but is the direct act of the person
by whose direction it is done.''* (Italics ours.)  [6]  And
again, when the plaintiff had placed her mark at the end
of the deed and her name was written thereon by Mr.
Witherspoon, and thereafter the plaintiff turned to Dr.
Reynolds as a notary public and acknowledged to him that
she executed that paper, such act was on her part an
adoption of the signature in its entirety and it became her
signature.  (36 Cyc. 448; 1 C. J. 786; *Eadie* v. *Chambers,* 172
Fed. 73 [96 C. C. A. 561, 18 Ann. Cas. 1096, 24 L. R. A.
(N. S.) 879]; *First Nat. Bank* v. *Glenn,* 10 Idaho, 224
[109 Am. St. Rep. 204, 209, 77 Pac. 623]; *Blaisdell* v. *Leach,*
101 Cal. 405, 408 [40 Am. St. Rep. 65, 35 Pac. 1019].)  Such
an adopted signature may fall within class two or class three.
As the rights of third persons are not involved, the sig-
nature was valid as between the parties. Such was the com-
mon-law rule. (8 R. C. L. 940.)  There is no statute in
California to the contrary. Certainly section 14 of the Civil
Code does not so state. What that section does state is this
and nothing more, that when a signature is by mark, that then,
and in that event, the signature may not be acknowledged
unless the signature is witnessed by two persons who must
subscribe their own names as witnesses thereto. Note, how-
ever, that under the facts of this case such clause was fully
complied with. Futhermore, the same section provides that
when a person cannot write he may make his mark and his
name should be written near, by a person who writes his
own name as a witness. This is a further call of the
statute. A failure to comply with the call is not defined
by statute. When the statute was enacted the legislature

must have realized that instruments signed by mark, witnessed by two witnesses, and acknowledged before a notary public would be entitled to be received in evidence without further proof. (Code Civ. Proc., sec. 1951.) That such papers would be entitled to recordation and that certified copies of the record would carry the same rights. (Code Civ. Proc., sec. 1951.) Yet how could it be ascertained from a certified copy who had written the name of the grantor? These considerations impel us to the conclusion that the mode of making the signature by mark is addressed primarily to unacknowledged instruments. The appellant cites and relies on *Sivils* v. *Taylor,* 12 Okl. 47 [69 Pac. 867]; *Sims* v. *Hedges,* 32 Okl. 683 [123 Pac. 155]; *Walker Bond & Co.* v. *Purifier,* 32 Okl. 844 [124 Pac. 322]; *Scivally* v. *Doyle,* 50 Okl. 275 [151 Pac. 618]; *Watson* v. *Billings,* 38 Ark. 278 [42 Am. Rep. 1]; *Fakes* v. *Wilder,* 70 Ark. 449 [69 S. W. 260]. The first four of those cases are from Oklahoma and the last two are from Arkansas. We think they do not support the appellant. If a promissory note or other paper is not acknowledged and the purported signature is by mark, which is not attached in the manner prescribed by statute, the attempted signature is not valid. Such is the rule in Oklahoma and in Arkansas. (See above cases.) But if a signature attached to the paper was made in a manner not in compliance with the statute on the subject, but the individual nevertheless appears before a notary public and states to that officer that he executed the instrument, the person does, by such act, adopt the purported signature and makes it his own. Such is the rule in other jurisdictions, and is also the rule in Oklahoma and in Arkansas. (*Campbell* v. *Harsh,* 31 Okl. 436, 439 [122 Pac. 127]; *Sims* v. *Hedges,* 32 Okl. 683, 687 [123 Pac. 155]; *Ward* v. *Stark,* 91 Ark. 268 [121 S. W. 382, 384].)

We find no error in the record. The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.