[Civ. No. 2513.    Third Appellate District.—December 22, 1922.]

# IDA I. WILCOX, Respondent, v. ETTA HARDISTY, Appellant.

[1] DEED—DELIVERY TO THIRD PARTY—INTENT TO PART WITH CONTROL—SUFFICIENCY OF EVIDENCE.—In this action to establish plaintiff's ownership of certain lands under a deed alleged to have been executed by her mother, while there is sufficient evidence to support a contrary finding, it cannot be said that the evidence is not sufficient to sustain the finding that the deed was delivered by the grantor at the time of its execution to a third party with intent to part with all right of subsequent control.

[2] ID.—INTENTION OF GRANTOR—QUESTION FOR TRIAL COURT.—Evidence that a grantor delivered his deed to a third person, with instructions to the latter to deliver it to the grantee after the grantor's death, without any other evidence of intention, is sufficient to justify the inference that the grantor thereby intended to part with all right thereafter to control the deed, and whether such inference is overcome by other proof involves the question of weighing the evidence, a matter within the exclusive province of the trial court.

[3] ID.—INTENTION AT TIME OF DELIVERY—CONTROLLING ELEMENT.— The intention of the grantor which is controlling is that existing at the very time of the delivery to the depository, and prior and subsequent acts and statements by the grantor are important only as throwing light upon his intention at the time of such delivery.

[4] ID.—UNDERSTANDING OF DEPOSITORY—IMPORTANCE OF.—The understanding of the depository as to the effect of the transaction is important only as bearing upon the value of his testimony as to what was actually said and done.

[5] ID.—PARTING OF CONTROL—SUFFICIENCY OF FINDING.—Where, in an action to establish ownership of lands under a deed alleged to have been executed by plaintiff's mother, the cross-complaint alleged that the grantor attempted to give the lands to plaintiff, but that the deed prepared for that purpose was never signed, sealed, nor acknowledged by the grantor, that she requested an attorney to keep the deed until she sent for it, and that he promised to return it upon her demand, a finding that the deed

---

1. Delivery of deed to third person or record by grantor, as a delivery to the grantee, notes, 7 **Ann. Cas.** 226; Ann. Cas. 1915C, 378, 385, 388; 54 **L. R. A.** 865; 9 **L. R. A.** (N. S.) 224; 38 **L. R. A.** (N. S.) 941.

was duly executed and delivered to the attorney to be held by him until the grantor's death and then delivered to the grantee, and that it was duly executed by the grantor and duly delivered to the grantee, is as definite as the pleadings and is responsive to the issues, although there is no express finding that the grantor intended to part with all control over the deed at the time of its delivery to the attorney.

APPEAL from a judgment of the Superior Court of Calaveras County. A. I. McSorley, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

R. L. Beardslee and Nutter & Hancock for Appellant.

Snyder & Snyder for Respondent.

FINCH, P. J.—In this action the plaintiff was adjudged to be the owner of certain lands in Calaveras County under a deed alleged to have been executed by her mother, Julia A. Jenkins.

In January, 1896, Mrs. Jenkins, a widow, and her daughter Etta, defendant herein, resided on the former's ranch in Calaveras County. Two other daughters, the plaintiff and Mrs. Emma Parker, resided elsewhere. At the request of Mrs. Jenkins, Frank F. Carnduff, a lawyer, having offices at Biggs, Butte County, went to the ranch and prepared four deeds. By reason of a crippled condition of her hands, Mrs. Jenkins was unable to write, and she signed these deeds by her mark, on the eighteenth day of January, 1896, Carnduff writing her name and signing his own as a witness. These deeds purported to convey 1350 acres of land; a certain part to one Hiram Tyrer and the remainder in separate parcels to the three daughters; that conveyed to plaintiff being the land in suit. There being no notary public present, Mrs. Jenkins requested Carnduff to make proof of the execution of the instruments so as to entitle them to be recorded. He took the deeds away with him and, January 25, 1896, made such proof before a notary public at Biggs, the notary attaching his certificates to the deeds. The deed to Tyrer was mailed to Mrs. Jenkins and the others retained by Carnduff. Carnduff testified: "As to the deeds to Etta Jenkins, Mrs. Parker

and Mrs. Wilcox, she [Mrs. Jenkins] instructed me to have them acknowledged, keep them in my possession until her death, and to give them to no living person but Ida Wilcox, in case of her death, or I wanted to be released from the trust, . . . and after her death, to give them to the parties named therein. . . . 'In case of my death,' I said in my testimony, . . . or wishing to surrender my trust, I should deliver them over to Mrs. Wilcox. . . . After they were acknowledged, I put them into an envelope . . . and I wrote on it the instructions, as near as I can remember, that Mrs. Jenkins had given me. I wrote on them fully in case of my death who they were to be delivered over to.'' He testified that he again went to Mrs. Jenkins' home at her request and, under her direction, drafted three other deeds to her daughters, making a different division of the land, by which Etta was given a larger part thereof; that these deeds were executed February 8, 1896, in the same manner as those of January 18th; that Mrs. Jenkins at that time said that Etta was dissatisfied with the division of the property theretofore made and was "raising the devil with her," and that she had to make a change to satisfy her, "as she had to live with her''; that Mrs. Jenkins instructed him to take the deeds of February 8th, "have them acknowledged and hold them until she sent for them''; that after she had signed the new deeds, "I said to Mrs. Jenkins: 'What shall I do with those three deeds of January 18th?' She says: 'You keep them and carry out my instructions,' and I says: 'Well, now, I presume you are going to write for these deeds. Now, suppose I get a letter from someone representing you asking that I return the deeds of January 18th, what shall I do about it?' She says: 'You return no deeds to any person,' that is, meaning the deeds of January 18th, that I had in my charge''; that in June, 1896, he received a letter from Mrs. Jenkins, requesting him to return the deeds of February 8th, and that he then mailed them to her; and that in August, 1905, he delivered the deeds of January 18th to the plaintiff, he then being about to travel extensively with his family. Carnduff further testified that he "understood that those deeds were to be escrow deeds," and that "Mrs. Jenkins had no right to make second deeds of the same property''; that if she had demanded the return of the deeds of January 18th, "I should have given them to her. . . . I claim that a person

has a right to divide or handle his property until they are dead. That is my doctrine.'' When asked if he told Mrs. Jenkins that he ''understood the law to be that she could have the deeds back at any time that she wanted them,'' he replied: ''I did not discuss the law with her.'' He testified that there was no understanding that the deeds were to be returned to Mrs. Jenkins if she so requested. The record book of the notary public at Biggs was admitted in evidence. It showed that Carnduff made proof of the execution of the deeds of January 18th and those of February 8th, as testified by him. Carnduff testified that the defendant was not present when Mrs. Jenkins instructed him what to do with the deeds of January 18th.

Relative to the deeds of January 18th, the defendant testified: ''Mr. Carnduff gave my mother the deeds. She said she did not have a safe place to keep them. He said: 'Well, you can give them to me, as Mr. Jenkins did, if you wish,' or words to that effect. . . . She says: 'I guess I should, but if I want these deeds, can I have them?' . . . He says: 'Any time you want these deeds, you can always have them,' and she says: 'With that understanding, I give you the deeds; take care of them for me.' . . . They were returned to my mother . . . some time in June, . . . the same year. . . . We buried them . . . in the bedroom; we took up the carpet and a board and dug a hole and buried them. . . . The following August . . . my mother destroyed them, she burned them. Mr. Carnduff was not at the house of my mother . . . in the month of February, 1896.'' August 23, 1897, Mrs. Jenkins executed a deed conveying a larger part of the land to defendant than was conveyed to her by that of January 18, 1896. October 27, 1898, Mrs. Jenkins made her will, by which she attempted to dispose of the ranch, giving the defendant the same lands described in the deed of August 23, 1897, and appointing her executrix without bonds. July 7, 1899, Mrs. Jenkins executed a codicil, making some changes in her will, but not cutting down the acreage devised to defendant. Mrs. Jenkins died February 5, 1907, and her said will, together with the codicil, was thereafter duly admitted to probate. February 6, 1907, the plaintiff caused the deed to her, of January 18, 1896, to be duly recorded and on the twelfth day of February, 1907, the defendant caused the deed of August 23, 1897, to be recorded.

[1] From the foregoing conflicting testimony it devolved upon the court to determine whether the deed under which plaintiff claims title was one of the instruments executed January 18, 1896, and, if so, whether Mrs. Jenkins delivered it to Carnduff, "Intending at the time of such delivery to the custodian to part forever with all right or power thereafter to repossess, retake, or control the deed." (*Long* v. *Ryan,* 166 Cal. 442, 444 [137 Pac. 29].) While there is sufficient evidence to support a contrary finding, this court cannot say that the evidence is not sufficient to sustain the finding that the deed was so executed and delivered. (*Bury* v. *Young,* 98 Cal. 446 [35 Am. St. Rep. 186, 33 Pac. 338]; *Husheon* v. *Kelley,* 162 Cal. 656 [124 Pac. 231]; *Estate of Cornelius,* 151 Cal. 550 [91 Pac. 329]; *Rice* v. *Carey,* 170 Cal. 748 [151 Pac. 135].) [2] Evidence that a grantor delivered his deed to a third person, with instructions to deliver it to the grantee after the grantor's death, without any other evidence of intention, is sufficient to justify the inference that the grantor thereby intended to part with all right thereafter to control the deed. Whether such inference is overcome by other proof involves the question of weighing the evidence, a matter within the exclusive province of the trial court. In *Saltzsieder* v. *Saltzsieder,* 219 N. Y. 523 [114 N. E. 856], it is said: "The evidence must show that the owner intended in the delivery to divest himself of his right to withdraw, revoke, or control the instrument as completely as though he were delivering it to the person named as grantee, and by words or act expressly or impliedly acknowledged his intention. Whether or not the intention existed and was expressed is a question of fact solvable by a consideration of the other facts. . . . In the present case the owner gave to a third person the instrument, adequate in form to convey the land to the persons named as grantees, with accompanying instructions to the third person to hold it until the owner's death and hand it over then to those persons. The act and language, considered by themselves, are adequate to expressly acknowledge the intention of the owner to be immediately and unconditionally bound by the provisions of the instrument." In *Wilson* v. *Bridgforth,* 108 Miss. 199 [66 South. 524], the grantor, after executing deeds and his will, handed them to his attorney and said: "Here are some papers I want

you to keep for me, and give to my children after my death." The court said: "All that is necessary in order for the depositary to become the agent of the grantee is for the deed to be deposited with him for delivery to the grantee 'without a reservation by the grantor, express or implied, of the right to retake it or otherwise control its use.' . . . This delivery of the deeds was certainly unaccompanied by an express reservation on the part of the grantor of the right to retake or otherwise control them; and we fail to find anything in the evidence from which such a reservation can be inferred, except the mere fact that the will was deposited with Wilson along with the deeds." The trial court in that case adjudged that the "deeds never became operative, for the reason that they were never intended to be, and in fact were not, delivered by the grantor." The judgment was reversed on appeal for the reasons stated.

[3]  The intention of the grantor which is controlling is that existing at the very time of the delivery to the depository. Prior and subsequent acts and statements by the grantor are important only as throwing light upon his intention at the time of such delivery. "A subsequent change of intention could not affect the delivery thus completed, and even a mental reservation of the testator contrary to that expressed by his words and deeds, existing only in his mind, would not invalidate the delivery effected by his acts and the words actually used." (*Hudson* v. *Hudson,* 287 Ill. 286 [122 N. E. 497]; *Norton* v. *Collins,* 81 Kan. 33 [105 Pac. 26]; *White* v. *Watts,* 118 Iowa, 549 [92 N. W. 660].)

[4]  Carnduff seems to have been uncertain as to the legal effect of the delivery to him of the deeds of January 18, 1896. It was within the province of the court, not that of the witness, to determine such effect. What he understood the effect of the transaction to be was important only as bearing upon the value of his testimony as to what was actually said and done. Evidence of what he "thought and of what he would have done with the deeds is of very little value, for we are concerned here only with what he had the right to do with them." (*Wilson* v. *Bridgforth, supra; Peterson* v. *Bisbee,* 191 Mich. 439 [158 N. W. 134]; *White* v. *Watts, supra; Adams* v. *Harris,* 118 Wash. 189 [203 Pac. 48].)  Appellant relies on the case of *Williams* v. *Kidd,*

170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]. In that case the trial court found that the deed there in question was not delivered with a present intention to pass title, and the higher court did not hold that the evidence was insufficient to support a contrary finding but said: "Taking into consideration all these circumstances, it cannot be said but that they fairly warrant the inferences drawn by the trial court and on which its finding of nondelivery was based."

It is contended that the court erred in sustaining plaintiff's objection to defendant's question as follows: "Q. Was anything said by your mother at the time those deeds were destroyed? Mr. Snyder: That is objected to upon the ground that it is irrelevant, incompetent and immaterial and hearsay testimony. The Court: Objection sustained. . . . Mr. Hancock: We take an exception to the ruling of the court on the last question. The Court: You do not contend seriously that that is admissible, do you? Mr. Hancock: Well, there is a question in my mind about it. The Court: The record may show that you have an exception. The court is clear on the question. Mr. Hancock: I want it a matter of record, that is all." The question was not so framed as to indicate that the evidence sought to be elicited was material to any issue in the case and counsel did not suggest to the court what he sought to prove. The question was broad enough to include matters wholly foreign to the case. Prejudice is not to be presumed, and there is nothing in the record from which this court can say that the evidence sought was material.

Mrs. Fouts testified that she was present in August, 1896, when Mrs. Jenkins burned three deeds; that "they were opened and we looked at them and burned them one by one." She was then asked: "Were you requested to look at them?" To this question the court sustained plaintiff's objection "on the ground that it is irrelevant, incompetent and immaterial." The testimony of the witness shows that she had looked at the deeds and knew at least some of the contents thereof and no reason is suggested why it was material to show who requested her to look at them. Other rulings of which complaint is made are similar to those discussed, and it is sufficient to say that they were not erroneous.

[5]  At the oral argument, appellant urged that the findings are insufficient, in that there is no express finding to the effect that Mrs. Jenkins intended to part with all control over the deeds at the time she gave them into the possession of Carnduff on January 18, 1896. Appellant's cross-complaint alleges that Mrs. Jenkins, on January 18, 1896, "attempted to give, grant, alien and confirm" the lands in controversy to plaintiff, but that the deed prepared for that purpose was "never signed, sealed nor acknowledged by said Mrs. Julia A. Jenkins"; that she requested Carnduff to keep the deed until she sent for it and that he promised to return it upon her demand; that he thereupon returned the deed to her at her request and that she destroyed it. The court found that the deeds of January 18, 1896, were duly executed by Mrs. Jenkins and that they were thereupon "delivered to said Frank F. Carnduff, to be held by him until the death of said Julia A. Jenkins to be then by the said Frank F. Carnduff delivered to the respective grantees therein named, and in case of the death of said Frank F. Carnduff before the death of Julia Jenkins, or if for any reason the said Frank F. Carnduff should so desire, the said deeds were to be delivered by said Frank F. Carnduff to said Ida I. Wilcox to be held by her until the death of Julia A. Jenkins." The court further found that the deed upon which plaintiff relies "was duly executed by the said Julia A. Jenkins, and duly delivered to the said Ida I. Wilcox." The foregoing findings are as definite as the pleadings and are responsive to the issues thereby raised. In *Williams* v. *Kidd,* 170 Cal. 631, 638 [Ann. Cas. 1916E, 703, 151 Pac. 1], the trial court found that Williams executed the deed there in question and handed it to Kidd, with directions to deliver it to the grantee after Williams' death. The court said: "It may be true that if the only evidence in the case and the only facts found were as recited above with reference to the making of the deed—the instructions of Williams and the carrying out thereof by Kidd—it might be held that these were sufficient to show that the deposit of the deed with Kidd was accompanied by an intention on the part of Williams that title to the property should thereby vest immediately in the grantee." In *Newman* v. *Fidler,* 177 Ind. 220 [97 N. E. 785], where a deed and a will had been handed to a depository, the court found:

"That after said deed was signed and acknowledged . . . the said decedent handed said deed to Robert J. Loveland with instructions to deliver them after her death." It was contended that the finding did not show that the grantor had relinquished control of the deed. The court said: "The facts found here show that, . . . after Mrs. Newman had executed her will and signed and acknowledged the deed, she handed the latter to a third person and instructed him to deliver it after her death. She thereby parted with any right to the possession of the instrument." Since the findings are responsive to the issues raised by the pleadings, it must be presumed in support of the judgment that the delivery found to have been made was an effective delivery.

The court adjudged the deed of August 23, 1897, "to be null and void, and of no force and effect." This is assigned as error. That deed purports to convey to defendant certain lands included in the deed upon which plaintiff's cause of action is based and other lands not in controversy here. There was no issue presented by the pleadings as to any land except that which was common to both deeds and the findings and judgment should have been limited accordingly. The court found that the deed of August 23d was duly executed and delivered. While it was not effective to transfer title to lands theretofore conveyed to plaintiff, the plaintiff has no standing to contest its validity as to other lands. While respondent contends, and correctly, that the judgment has no validity except as between the parties and with respect only to the land in controversy, the judgment should be expressly limited to that particular land.

The judgment is modified by inserting, after the word "void" therein, the words "in so far as it purports to convey to defendant any of the lands described in the aforesaid deed, executed on the eighteenth day of January, 1896, by Julia A. Jenkins to the plaintiff," and, as so modified, the judgment is affirmed, respondent to recover costs on appeal.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 19, 1923.

All the Justices concurred.