[Civ. No. 3302. Third Appellate District.—September 30, 1927.]

ROSE BRANDT, as Executrix, etc., et al., Appellants, v. LOUIS BRANDT et al., Respondents.

Gerald C. Halsey and Frederick T. Leo for Appellants.

A. R. Bogue, R. C. Minor and Scott Rex for Respondents.

PLUMMER, J.—Charles H. W. Brandt, by his first wife, Theresa Brandt, had five sons and three daughters. Theresa was the sole heir of her father, C. A. Bachmann, and inherited from him all the lands referred to herein. After the descent was cast from Bachmann, Theresa granted by deed of conveyance all of her interest in and to said property to Mr. Brandt. Theresa Brandt died on or about July 28, 1904. Shortly before that date she requested her husband, Mr. Brandt, to leave all of their property to their children. This Brandt promised her he would do. On August 2, 1904, after the death of his wife, Theresa, Mr. Brandt went to the office of Mr. Charles L. Neumiller, an attorney at law in the city of Stockton, and had Neumiller draft a will disposing of all his personal property, and also then and there had Mr. Neumiller prepare certain deeds conveying to his children certain lands and premises in the county of San Joaquin. The validity of one of these deeds is involved in this action. These deeds, after being drafted, were left in the custody of Mr. Neumiller. Mr. Brandt's instructions to Mr. Neumiller were to prepare these deeds and deliver them to the respective grantees on his death. Mr. Neumiller's testimony in this particular is as follows: "He gave me instructions to prepare these deeds running to his children, and I prepared the deeds and he signed them and acknowledged them and gave them to me with instructions to deliver to the children upon his death." The deeds were separately inclosed in envelopes by Mr. Neumiller, and Mr. Brandt's instructions, in substance, indorsed thereon,

the indorsement reading as follows: "Deed of C. H. W. Brandt to" (here appeared the name of the grantee, as the case might be) "to be delivered upon the death of C. H. W. Brandt." The indorsement on the envelopes containing the respective deeds was substantially in the same form as to all of them. The deeds referred to were all left in the custody of Mr. Neumiller and remained continuously in his possession until after the death of Mr. Brandt, save and except as to one of the deeds which was borrowed from Mr. Neumiller by Mr. Brandt for a few minutes to show to some party for some purpose not disclosed by the testimony, and then returned to Mr. Neumiller. The deed here just referred to was out of the possession of Mr. Neumiller from one to two hours only, and upon the receiving of this deed from Mr. Neumiller, Mr. Brandt signed and handed to Mr. Neumiller a receipt therefor. After the death of Mr. Brandt, which occurred on December 8, 1924, Mr. Neumiller delivered all the deeds herein referred to to the respective grantees named therein. The deed in controversy in this action was delivered by Mr. Neumiller to the respondents, August, Louis, and Frederick Brandt. This deed was subsequently recorded on December 27, 1924. On April 22, 1916, Mr. Brandt made a new will, and on December 2, 1922, he executed a codicil thereto. Under this will 370 acres of the land described in the deed to the defendants herein named was devised to the five sons of the said Brandt, namely, Fred, Charles, Louis, Gus, and Emil. The will differs from the deed in that under the will each would take one-fifth, whereas under the deed the grantees therein would take one-fourth each. As to the remaining 33 acres contained in said deed in controversy, the will purported to devise and give the same to Rose Brandt, the surviving wife of the deceased; Mr. Brandt, after the death of his first wife, having married Rose Brandt on October 20, 1906.

The transcript shows that after the execution of the deed by Mr. Brandt in 1904, at various times, he executed different instruments in relation thereto, to wit, a mortgage dated November 20, 1905, for $10,000; a mortgage dated November 7, 1910, for $10,722.40; a mortgage dated October 1, 1913, for $16,900; a mortgage dated September 13, 1918, for $16,900; a mortgage dated August 6, 1923, for $16,900. Also, that on March 18, 1911, he made a deed to his son,

Charles H. Brandt, of property described in a prior deed to him, and delivered the same to him immediately in consideration of the sum of $15,000. At the time of executing the first deed herein referred to Mr. Brandt was of the age of about sixty-five years.

In addition to the foregoing, the plaintiff testified as follows: That in 1904 she was and for some time previously had been the housekeeper for Mr. and Mrs. Brandt; that on or about the second day of August, 1904, at the residence of Mr. Brandt on his ranch on the San Joaquin River, Mr. Brandt made some statements to her in relation to his disposition of the property that he had received from his wife. This testimony is as follows: "Q. Calling your attention to the conversation you had with Mr. Brandt in the dining-room you have told us of, on the morning of the 2d of August, 1904, what did he say? A. He told me he was going to town to Mr. Neumiller's office to leave, by will and deeds, the Brandt Ranch for the three girls, the home ranch for the four boys, and the Island ranch for Charlie, so in case anything happened to him it would save probate expenses." The appellant also called to the stand another witness named Miss Catherine Tully, a resident of Stockton, who, after testifying that she had attended to certain insurance business for Mr. Brandt, and that Mr. Brandt had made some statements to her relative to leaving his property after the death of his wife in 1904, testified: "Q. Tell us what he said to you, as near as you can recall? A. Within a week after Mrs. Brandt's death, I think it was the first time he came to the office after Mrs. Brandt had passed, he said he was going to make deeds in escrow at the request of his wife. He had promised his wife to leave the property so as to save probate, the Island Ranch to Charles, the C. A. Bachmann ranch, which was inherited by his wife from her father, to the girls, share and share alike—that was his three daughters—and the balance of his property, which was the home ranch, to the sons, share and share alike."

The trial court gave judgment to the effect that the deeds executed by Mr. Brandt in 1904 were effectual to convey the lands and premises therein named to the respondents in this action, and from this judgment the plaintiffs appeal.

The contention made here is that the deeds were testamentary in character; that they never passed out of the control of the grantor; and that the grantor had no intent that the title to the property mentioned in the deeds should immediately pass to the grantees therein named.

That there was a manual tradition of the deed involved in this action is beyond question. It was handed to Mr. Neumiller with the request to keep the same and deliver to the grantees upon the death of the grantor. The intent with which the deed involved in this action was placed in the custody and control of Mr. Neumiller must be gathered from the circumstances surrounding the transaction. We find nothing in the testimony which tends to sustain the contention of the appellants that Mr. Neumiller was simply the agent of Mr. Brandt and held the deeds in his custody as such agent. The fact that Mr. Neumiller had acted as the attorney for Mr. Brandt, or rather for Mrs. Brandt, in the settlement of her father's estate in 1904, and also as attorney for Mr. Brandt in the execution of the will referred to herein as executed in 1904, does not impel the conclusion that Mr. Neumiller was the agent of Mr. Brandt, rather than the trustee of the grantees named in the deeds of which he was, for the time being, custodian.

As bearing directly upon the intent with which the deeds were executed and delivered to Mr. Neumiller, to be held by him and delivered to the grantees therein named, Mr. Neumiller's testimony is substantially as follows: Mr. Brandt gave me instructions to prepare these deeds running to his children and I prepared the deeds and he signed them and acknowledged them and gave them to me with instructions to deliver to the children upon his death. "Q. Do you recall anything further that took place or that was said between you and him at that time, Mr. Neumiller? A. Of course there was a discussion of the properties to be included in the deeds, and the purpose of the deeds, and the usual—I would not say usual—but the transaction of course was discussed with Mr. Brandt by me, and by him to me. Q. In the course of that discussion was anything said as to what the legal effect of what he was doing would be upon his rights in the land covered by the deeds? A. I explained to Mr. Brandt the transaction. Q. We will have to ask you, Mr. Neumiller, to state to us the statement

that you made to him as you are now able to recall it? A. Well, in the making of these deeds, and in the signing of them, and the delivering of them to me, I explained to Mr. Brandt what the legal effect of that was, in my opinion. Q. Well, if you will go ahead, Mr. Neumiller, and tell us what the discussion was, particularly relative to the effect of these deeds, and more particularly this deed, if there was any separate discussion with reference to it? A. I advised him at that time, or discussed with him, that the delivery of the deed to me, or the deposit of the deed with me, and then for me to deliver at the time of his death, reserved in him, in my opinion, a life estate. In other words, I explained the transaction to Mr. Brandt as best I could, with what ability I possessed." The witness further testified that after the discussion the deeds were left with him; that after that time there was no modification or change in the condition of the trust under which those deeds were left with the witness; that witness placed the deeds in envelopes and indorsed thereon the words, "To be delivered upon the death of C. H. W. Brandt," etc. The advice given by Mr. Neumiller to Mr. Brandt as to the effect of the deeds was objected to, and thereafter, upon motion of counsel for the appellant, this portion of the witness' testimony was stricken out, to wit: "I advised him at that time, or discussed with him that the delivery of the deed to me or the deposit of the deed with me, and then for me to deliver at the time of his death, reserved in him a life estate," etc. The motion of appellant to strike from the testimony of the witness Neumiller was limited expressly to what we have here quoted. As this motion was granted by the trial court, the appellants' argument that it was properly granted is immaterial to a decision herein, and as judgment went for the respondents, from which no appeal is prosecuted by them, their contention that such testimony is admissible is not before us for determination. The appellants having had the witness Neumiller's testimony stricken out cannot be heard to complain, and the respondents having had judgment, are not injured. There remains in the testimony of Mr. Neumiller only that portion which relates to the circumstances under which the deeds were executed, the fact that the purposes were talked over, and then the instructions given by Mr. Brandt to Mr. Neumiller as to Neumiller's

keeping the deeds, and the final handing of the same to the grantees therein named upon the death of Mr. Brandt, which, we think, placed before the trial court sufficient facts to justify the conclusion that Mr. Brandt knew exactly what he was doing and fully understood the transaction, even though the testimony of Mr. Neumiller as to what he, Neumiller, thought of the legal effect of the transaction was stricken from the record. Under the circumstances which we have detailed, although argued, we do not find that there is anything really for us to decide as to whether the advice given by Mr. Neumiller, or the opinion expressed by Mr. Neumiller to Mr. Brandt, was or was not admissible. The facts set forth in Mr. Neumiller's testimony as to the acts of Mr. Brandt and the instructions given by Mr. Brandt enabled the trial court to draw its own conclusions, and the presumption may be indulged that the trial court was qualified to do so, irrespective of the opinion of Mr. Neumiller.

That all the testimony of Mr. Neumiller, outside of that stricken from the record by the trial court, was admissible is so firmly established in this state that we need only to cite the memorandum opinion of the supreme court in denying a petition for hearing in the case of *Messersmith* v. *Smith*, 62 Cal. App 446 [217 Pac. 105], where it is stated that subdivision 2 of section 1881 of the Code of Civil Procedure has no reference to the instructions given by a grantor to the holder of a deed to whom the deed has been delivered with instructions to pass the same to the grantees therein named upon the happening of some future event. It is there further said: ''Where the communication between the client and attorney is one authorizing the attorney to perform some act on behalf of the client, the communication giving such authority is not a confidential communication by the client, and the attorney may testify to the instructions given to him.'' (Following this statement, numerous authorities are cited.)

While testimony of subsequent acts of a grantor is admissible as bearing upon the intent with which deeds have been executed and delivered, and whether or not the same are delivered with intent to pass title, or are only testamentary in character, such testimony is not conclusive, but simply goes into the record as testimony for the trial court

to weigh and determine in making its findings and drawing its conclusions as to the character of the act performed by the grantor and the intent entertained by him at the time of its performance. Many cases may be cited from the reports where subsequent attempts have been made to regain possession of the deeds so executed and delivered, and also of subsequent acts in relation to the property, such as executing mortgages and subsequent deeds. These cases all uphold the principle of law which we have just stated. Such acts are admissible as testimony, but are not conclusive. Without analyzing the cases involving subsequent acts, we will simply cite a few where the subsequent acts were as definitive in their character as in the case at bar, and were not held to preclude a finding that the deed, delivered with instructions, such as we have here, constituted a valid and binding transfer of title. (*Boicelli* v. *Giannini*, 65 Cal. App. 601 [224 Pac. 777]; *Decou* v. *Howell*, 190 Cal. 741 [214 Pac. 444]; *Wilcox* v. *Hardisty*, 60 Cal. App. 206 [212 Pac. 633]; *Pitney* v. *Pitney*, 55 Cal. App. 22 [202 Pac. 940]; *Bury* v. *Young*, 98 Cal. 446 [35 Am. St. Rep. 186, 33 Pac. 338]; *In re Estate of Cornelius*, 151 Cal. 550 [91 Pac. 329]; *Smith* v. *Smith*, 173 Cal. 725 [161 Pac. 495].)

We do not deem it necessary to discuss at length the objection of vested rights urged by the appellant further than to say that the principle considered in the case of *Greene* v. *Skinner*, 185 Cal. 435 [197 Pac. 60], and other cases where the same questions were involved, have no bearing upon the issues presented to us for consideration. Nor is there anything in the objection that the grantees had no knowledge of the execution and delivery of the deeds referred to by Mr. Brandt to Mr. Neumiller. (See *Neely* v. *Buster*, 50 Cal. App. 695 [195 Pac. 736].) A large number of cases are there cited and they all hold in effect that where a grantor intends that the deed executed by him shall operate as a present transfer of title, and delivers it to a third person without condition, the title passes, as of the date of the delivery, to such person, although the deed is not actually delivered to the grantee until after the grantor's death. And this, irrespective of whether the grantee has or has no knowledge of the existence of the deed until after the grantor's death.

Relying upon the case of *Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1], wherein the court, speaking through Justice Lorrigan, in considering certain words of the grantor, used the following language: "It was a fair inference to be made by the court that Williams, when he commenced the preparation of these deeds, had in contemplation the testamentary disposition of all of his property, and that the making of the four deeds, including the one in controversy, was a part thereof. That he so intended would appear from the language he used in the several talks held between himself and Mr. Kidd before they actually commenced the preparation of the various deeds which the scheme contemplated. He spoke of 'leaving his property that way—by deed,' which is not reasonably open to any other construction." The appellant urges that the language said to have been used by Mr. Brandt in the presence of the plaintiff and of the witness, Miss Tully, is conclusive evidence that Brandt intended only a testamentary disposition, and much stress is laid upon the word "leave." We do not think that use of the word "leave," if used by Brandt, has any such binding force or effect or can reasonably be given any more force or effect than any other portion of the language used by him when speaking of the disposition of his property and giving instructions to Mr. Neumiller. There are a number of authorities which hold that the word "leave" is susceptible of, and may be reasonably given a different interpretation from that indicated in the excerpt which we have quoted from the case of *Williams* v. *Kidd.* In 36 Cal. Jur. 974 we find the following: "The word 'leave' is often used with reference to property left by will, meaning to give or dispose of by will; but it is so often loosely used, that its use should not be given controlling importance in determining whether a document showed a gift or was testamentary in character." (Citing authorities.) This definition we think much more consonant with good reasoning than any holding that such language must be given any absolute or controlling effect. It is simply a bit of testimony for consideration by the trial court.

In the case of *Innes* v. *Potter,* 130 Minn. 320 [3 A. L. R. 896, 153 N. W. 604], the supreme court of Minnesota had before it for consideration the meaning of the word "leave,"

used by a donor when executing and delivering a deed to a trustee, just as we find in this case, and there the court said: "Nor do we attach great importance to the statement of Casey that Potter said that he wanted to leave a certain amount of property to his daughter Marcia. The word 'leave' is often used with reference to property left by will, but the word is often loosely used, and its use should not be given controlling importance."

There is another fact to be borne in mind. The testimony of the plaintiff and Miss Tully purports to relate a conversation which took place at a period twenty years antedating the date when the testimony was taken in court. What Mr. Neumiller testified to as to the directions given him by the grantor in 1904 had reference to what was written down by him at the time the deeds were executed, and was not a mere matter of recollecton. Where a witness purports to relate a conversation or statements of one which took place twenty years preceding the time of giving the testimony, we think that the last clause of subdivision 4 of section 2061 of the Code of Civil Procedure may very well be considered by the trial court, where the rule is set forth that evidence of the oral admissions of a party should be viewed with caution. It is not a question of whether the witnesses under such circumstances are merely honest or dishonest, but language filtered through human recollection and coming into the record twenty years after the occurrence is necessarily of so weak a character that even though the word "leave" were actually used by Mr. Brandt in talking with the witnesses, its force and effect is such that we think the trial court would be justified in giving it but little weight. The testimony of Miss Tully, however viewed, is about as favorable to the respondents as to the plaintiffs. This witness testified: "I think it was the first time he came to the office after Mrs. Brandt had passed—he said he was going to make deeds in escrow at the request of his wife. He had promised his wife to leave the property so as to save probate." This language certainly does not impel the conclusion that Mr. Brandt had only a testamentary intent.

Is there sufficient testimony in the record to support the finding of the trial court that the grantor intended to immediately pass title? We have heretofore set forth the testimony of Mr. Neumiller as to the instructions given to

him by Mr. Brandt, the grantor. This court had before it the effect and weight of such testimony in the case of *Wilcox* v. *Hardisty,* 60 Cal. App. 206 [212 Pac. 633]. In that case this court said: "Evidence that a grantor delivered his deed to a third person with instructions to deliver it to the grantee after the grantor's death, without any other evidence of intention, is sufficient to justify the inference that the grantor thereby intended to part with all right thereafter to control the deed. Whether such inference is overcome by other proof involves the question of weighing the evidence, a matter within the exclusive province of the trial court." The record in this case is absolutely silent with reference to any intent on the part of the grantor to exercise any dominion or control over the deeds executed and delivered by him to the witness Neumiller. The deeds were handed to Mr. Neumiller without any conditions whatever, save and except the limitation that they were not to be handed to the grantees until after the grantor's death. There is no evidence that the grantor retained any control or dominion over the deeds whatever.

Appellants argue that the quotation which we have taken from the case of *Wilcox* v. *Hardisty, supra,* is mere *obiter*. An examination of the facts involved in that case show, however, that in this contention the appellants are in error. The court was there speaking of an essential portion of the testimony in the case, and to be considered by the trial court and the effect to be given thereto. That there was other evidence in the case bearing upon the same subject does not render this language mere *dictum*. The rule set forth in *Williams* v. *Southern Pacific Co.,* 54 Cal. App. 571, quoting from page 579 [202 Pac. 356, 359], as to what is *obiter* and what is not, is pertinent: "Appellant urges that this latter statement by the court is mere *dictum*, but where there are two grounds, upon either of which the judgment of the trial court can be rested, and the Appellate Court sustains both, the ruling on neither is *obiter*, but each is the judgment of the court and is equally valid with the other." (Citing *Union Pacific R. R. Co.* v. *Mason City & Fort Dodge R. R. Co.,* 149 U. S. 160 [50 L. Ed. 134, 26 Sup. Ct. Rep. 19, see, also, Rose's U. S. Notes].) The rule which we have just stated, set forth in *Wilcox* v. *Hardisty, supra,* as to the weight which may be given by a trial court to in-

structions given by a grantor when delivering deeds to be handed to grantees at a later date, is supported by the following authorities: *Wilson* v. *Bridgforth*, 108 Miss. 199 [66 South. 524]; *Saltzsieder* v. *Saltzsieder*, 219 N. Y. 523 [114 N. E. 856]; *Stonehill* v. *Hastings*, 202 N. Y. 115 [94 N. E. 1068]; *Parrott* v. *Parrott*, 92 Ohio St. 184 [110 N. E. 725].

There being sufficient testimony in the record to support the finding of the trial court that the deeds executed and delivered by Brandt to Mr. Neumiller in 1904 were executed and delivered with the present intent of the grantor to then and there pass title, limited only as to future enjoyment by the grantees, it follows that the judgment of the trial court must be and the same is hereby affirmed.

Burroughs, J., *pro tem.*, and Finch, P. J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 28, 1927.