[Civ. No. 528. Fourth Appellate District.—February 5, 1932.]

IVAN KELSO, Respondent, v. WILLIAM SLOSBURG, Appellant.

William W. Bearman, Arthur S. Guerin and A. Feldman for Appellant.

Ivan Kelso, *in pro. per.*, and Gilbert A. McElroy for Respondent.

MARKS, J.—This is an action for the specific performance of a contract of sale and purchase of lot ten of R. Zellner's subdivision of a part of block eight of the Los Angeles Homestead Tract in the City of Los Angeles, which was owned by respondent Ivan Kelso and Mathilda L. Kelso, his wife.

On May 31, 1927, respondent was approached by appellant and Henry Horn in an effort to buy the above-described real estate. After some negotiations an oral agreement was reached whereby respondent was to sell the real estate to appellant for the sum of $9,750, with the house thereon removed. Appellant paid respondent $250 on account of the purchase price. The westerly ten feet of the lot was subject to the easement of a recorded driveway

agreement between respondent and Frank C. Egan, deceased, and an option in Egan to purchase the westerly two and one-half feet of the Kelso property. The binding legal effect of this agreement was questionable. Appellant desired to have this record cloud removed from the title and respondent was of the opinion that the Egan agreement was void and could be voided without much trouble or delay. Appellant orally agreed to pay respondent an additional sum of $100 when this was accomplished.

On June 1, 1927, respondent and appellant went to the Central Escrow Office of the Pacific Southwest Trust and Savings Bank in Los Angeles and signed escrow instructions for the sale and purchase of the lot whereby appellant agreed to pay the total sum of $9,750 for it—$9,500 through escrow in addition to the $250 which he had paid to respondent the day before. His written requirements as to the title were that it should be "free of incumbrances except: all taxes for the fiscal year 1927–1928, if any, and all taxes and assessments levied or assessed subsequent to the date of these instructions; conditions, restrictions, reservations, rights, rights of way and easements now of record, if any; and subject to an option to purchase the westerly $2\frac{1}{2}$ feet of the above described property". His escrow instructions also contained the following: "I will also execute and deliver to you before the time limit hereinafter named any instruments and additional funds required from me to enable you to comply with these instructions, all of which you are authorized and instructed to use provided on or before July 1st, 1927, instruments have been filed for record entitling you to procure an assurance of title in the form of a Guarantee, Continuation guarantee, Certificate, Continuation Certificate of Title or Policy of Title Insurance with liability of title company limited to not less than $9750.00 (if a Continuation Guarantee or Certificate is procured the above liability shall apply to it only) as to the following described property. . . . In the event that the conditions of this escrow have not been complied with at the time provided herein, you are instructed, nevertheless, to complete the same at any time thereafter as soon as the conditions (except as to time) have been complied with, unless I shall have made written demand upon you for the return of money and instruments deposited by me."

Respondent's signed instructions agreed to the sale at the price fixed; the delivery of a deed executed by himself and wife and a guarantee of title of the property as specified by appellant. He also instructed the escrow agent to pay a mortgage on the property to the Bank of Italy out of the money to come into its possession.

At the same time respondent prepared, and appellant signed, the following: "Memorandum of Agreement between William Slosburg and Ivan Kelso, both of Los Angeles, California. Whereas, the parties have agreed to buy and sell the premises at 830 West 17th Street, Los Angeles, Slosburg, being the buyer for the sum of $9,750, it is agreed as part of the transaction, that (A.) Slosburg will clear the lot of trees, etc., sufficiently to enable the seller to remove the house therefrom; and (B.) Slosburg will allow twenty days from completion of escrow in which to remove the house now situated at said address, after the obstructions, that is the trees, etc., have been removed." This writing, with the escrow instructions, constituted the written memoranda of the contract of sale between the parties.

On June 7, 1927, respondent deposited the required deed in escrow executed by himself and wife. On or about June 9, 1927, the Title Insurance Company reported to the escrow agent that it could certify and guarantee, in the required amount, title to the property vested in respondent and his wife free and clear of encumbrances except taxes for the fiscal year 1927–1928, the Frank Egan driveway agreement as a recorded easement, the option in Egan to purchase the west two and one-half feet of the property, and the mortgage to the Bank of Italy. Appellant did not deposit, nor offer to deposit, the $9,500 balance of the purchase price on or before July 1, 1927, or at all. He had knowledge of the deposit of the deed and the willingness of the title company to certify title as already set forth.

On July 5, 1927, appellant was notified of the progress made in removing the Egan driveway easement and releasing the option to purchase. He was informed that respondent hoped to have these record encumbrances removed soon. Appellant agreed to wait a little longer to enable respondent to effect their removal. The next day appellant attempted to withdraw from the escrow by delivering to the escrow agent the following: "As the report of title furnished you by Title Insurance and Trust Company indicates that the

title cannot be written as called for in my instructions of June 1, 1927, and as the amount of street frontage to which clear title can be given is not as much as represented, I hereby cancel my escrow instructions heretofore given in this escrow.''

On July 9, 1927, respondent had so far succeeded in his effort to remove the record easement of the Egan driveway agreement and option that the title company was willing to certify and guarantee title to the property free and clear of these record encumbrances. This was communicated to appellant and request made that he pay the $100 which he had promised. This was refused.

Appellant sets forth many specifications of error which can be consolidated and considered under three heads as follows: (1) That respondent did not own all the title to the property at the time the contract of sale was made and that it was, therefore, not mutual; (2) that respondent was guilty of fraud in representing to appellant that title to the property was free of all encumbrances except the Egan option to purchase the west 2½ feet of the property; (3) that there was no evidence that the property was fairly worth the selling price.

The trial court resolved all issues against appellant and in favor of respondent and expressly found against fraud on the part of respondent and that the contract was fair, just and equitable and that the property was worth the selling price. While the evidence is slightly conflicting, its great preponderance supports the findings except as to value. We are not concerned with conflicts in the evidence here.

 While the original writings for the sale of the property were not signed by Mrs. Kelso, she joined in a deed with her husband granting the property to appellant, which deed was deposited with the escrow agent on June 7, 1927. While there might have been want of mutuality in the inception of the contract this deposit of the deed cured the defect. (23 Cal. Jur. 448–452, and cases cited.)

 The evidence on the question of fraud is strongly against the contention of appellant and is amply sufficient to support the findings of the trial court. Appellant tried to buy the Egan property shortly before May 31, 1927. A representative of Egan's estate told him of the option to buy two and one-half feet of respondent's property and

the driveway easement. The agent expressed a belief that the agreements were void. On May 31st, at his first meeting with appellant, respondent attempted to tell him of the terms of the Egan agreement. Appellant would not let respondent proceed, telling him in effect that he knew its terms. There is no merit in the contention that this finding is not supported by the evidence. Any other finding would be contrary to the weight of the evidence.

It should be observed that in his escrow instructions appellant did not specify that he was to receive title free and clear of any rights of way or easements, but specifically specified that he would accept it subject to those of record. The Egan agreement was of record and was not a cloud on the title to which appellant could object. He knew of the existence of the writing and some, if not all, of its terms. He probably knew of all of them. Under the writings respondent was ready and willing to perform on or about June 9, 1927. Appellant was in default by his failure to pay the $9,500 in escrow on July 1, 1927. The subsequent effort of respondent to remove the cloud of the Egan agreement was not made necessary by the terms of the writings, but was an effort to earn the added $100 promised by appellant under an oral agreement made outside and independent of the escrow. Appellant's attempted cancellation of his escrow instructions and attempted withdrawal from the contract of purchase came too late and after he was in default and after respondent had offered to perform in accordance with his contract and within the time limit specified therein. The writings in evidence show an enforceable and binding contract for the sale and purchase of property under the rules announced in *Finn* v. *Goldstein*, 201 Cal. 605 [258 Pac. 85].

Appellant urges that there is no evidence in the record supporting the allegations of the complaint and the finding of the court that the contract of sale was fair, reasonable and just and the property worth the price specified. The record shows that respondent attempted to introduce evidence to support this allegation of the complaint, but that it was excluded by the trial court on the objection of appellant. This ruling was unquestionably erroneous. The evidence having been excluded and the error committed at the instance of appellant he cannot

now complain of the lack of the evidence and take advantage of the erroneous ruling of the trial court for which he was responsible. (*Brandt* v. *Brandt*, 85 Cal. App. 720 [260 Pac. 342].) Further, there is some slight evidence in the record supporting the finding.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.