[14005. Department Two. — February 26, 1892.]

WILLIAM RIX, APPELLANT, v. JOHN HORSTMANN
ET AL., RESPONDENTS.

ADVERSE POSSESSION — PAYMENT OF TAXES — USE WITHOUT OBJECTION OF
OWNER — CLAIM NOT ADVERSE. — Where the legal title to property is
owned by one person, and the property is possessed and used, without
asking permission and without objection from the owner, by another
person, who is related to the owner, and who pays all taxes assessed in
the name of the owner for a period of more than five years, but who
does not claim the property as his own, or notify the legal owner of any
adverse claim to the property, the possession is not adverse.

APPEAL from an order of the Superior Court of the
city and county of San Francisco denying a new trial.

The facts are stated in the opinion.

*William Rix*, for Appellant, *in pro. per.*

*George A. Rankin*, for Respondents.

TEMPLE, C. — Plaintiffs appeal from an order refusing
a new trial.

The action is to quiet title to a lot of land fronting
nineteen feet on Pine Street, in the city of San Fran-
cisco.

Horstmann is the only defendant who answered, and
he claims to have acquired title though A. G. Spencer,
under a proceeding for the foreclosure of two mortgages
executed by him.

It was admitted at the trial that the legal title is in
Horstmann, unless the plaintiff has title by the adverse
possession of himself or his grantor.

Since 1870, Alfred Rix, plaintiff's father, has owned a
lot on the corner of Pine and Powell streets in San Fran-
cisco, and upon it there has been a large boarding-house,
which has been kept by Rix, his wife superintending and
managing it.   It was known as 743 Pine Street.   Ad-
joining, being 739 Pine Street, on the property in dis-
pute, was a two-story house, of which it seems Alfred
Rix had possession as early as 1870.   How he became

possessed the record does not show. This property has a frontage on Pine Street of nineteen feet. Next to it, easterly, at 737 Pine Street, was the residence of A. G. Spencer for three or four years beginning with 1870. After that he lived in the boarding-house at 743 Pine Street.

Mrs. Spencer was the sister of Mrs. Alfred Rix, and seems to have assisted her in managing the boarding-house. There is some evidence tending to show that the boarding-house business included the three buildings above mentioned.

A. G. Spencer acquired title to lot 739 in 1871, but Alfred Rix continued to rent the property, and to collect rents, and make such repairs as were required, down to May, 1889, at which time plaintiff received his deed.

Rix also paid all taxes assessed on the property during that period. It was always assessed to A. G. Spencer.

Spencer mortgaged the property soon after his purchase to secure a loan of fifteen hundred dollars from the Hibernia Bank. Afterward he mortgaged the property to the Clay Street Bank to secure a loan of the same amount, and then to the French Bank. The last-named mortgage was in existence on and after 1880, and the mortgage tax, as the law required, was assessed to the bank. Alfred Rix paid not only the tax assessed on the property to A. G. Spencer, but the tax on the mortgage assessed to the bank, for the interest acquired through its mortgage from Spencer. This mortgage was given before the new constitution took effect, and provided that the mortgagor should pay the taxes. Rix continued to pay them until 1886.

In 1879 the furniture in the boarding-house was attached, and Mrs. Rix, settling an indebtedness which must have been her husband's, compromised the claims, and one of the conditions of the compromise was, that the payment of two thousand dollars should be secured by a mortgage upon the property in dispute. It was so secured by a mortgage executed by A. G. Spencer. It

is one of the mortgages under the foreclosure of which defendant Horstmann claims to have acquired title.

Alfred Rix was not called as a witness by the plaintiff, who is his son. No one ever heard him say that he claimed the property as his own. His brother-in-law, Spencer, testified: "Mr. Alfred Rix never claimed to me to own the property. No one except myself ever claimed to own it, so far as I know."

Plaintiff tells how he acquired his title: "No consideration actually passed. I wrote to my father, and told him I wanted the piece of property. I made out the deed and sent it to him, and he executed it."

Spencer was a witness for defendant. He is plaintiff's uncle, and his interest in the property had been foreclosed and sold. He does not seem to know how Rix came to keep possession of the property. He says: "I knew who was occupying it,—tenants of Mrs. Rix. She kept a boarding-house. I never gave her permission to use the property."

"Q. Well, how did she come to use it? A. Well, she had possession of the premises. She never requested my permission.

"Q. Well, did you ever make any objection to her using them? A. I did not.

"Q. Just let her use them? A. She had possession; she might as well use it, anyway."

His deposition was taken before the trial. Being asked in regard to improvements, he testified:—

"Q. Didn't you know the front of the place was different,—that is, the front steps? A. Perhaps Mr. Rix did that; I never told him. It might have been for his own benefit. He said he ought to do something for the use of it."

At the trial he testified that this answer was a mistake; that Rix did not make the remark attributed to him. The court may have believed the first statement.

We think the trial court correctly held that the possession of Rix was not adverse.

The alleged error in allowing Freeman and Bates to

testify that plaintiff brought to their office the abstract showing Spencer's title, and that he urged the sufficiency of the security for the two-thousand-dollar mortgage, conceding it to have been error, was harmless. So far as there was any point in it, the evidence was already in, without objection, in the testimony of plaintiff himself.

We advise that the order be affirmed.

VANCLIEF, C., and BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order is affirmed.

<div style="text-align:right">

93 505
97 425

93 505
116 668

93 505
118 225

93 505·
139 94