[S. F. No. 5781. Department One.—May 24, 1912.]

PATRICK HUSHEON, Appellant, v. MRS. J. W. KELLEY, Respondent; MARY A. KELLEY, as Administratrix of the Estate of James W. Kelley, Deceased, Intervener and Respondent.

DEED—DEPOSIT IN ESCROW—INSTRUCTIONS TO DELIVER AT GRANTOR'S DEATH—LOSS OF CONTROL OVER DEED—TITLE VESTS IN GRANTEE SUBJECT TO LIFE ESTATE OF GRANTOR.—A deed deposited in escrow by the grantor, with instructions to the depositary to deliver it upon his death to the grantee named therein, the grantor retaining no power to withdraw the deed or to exercise any control over it, vests title immediately in the grantee, subject only to a life interest in the grantor.

ID.—TITLE CANNOT BE AFFECTED BY PAROL AGREEMENT.—The title so vested cannot be limited or otherwise affected by a subsequent parol agreement between the grantor and the grantee.

ID.—SUBSEQUENT AGREEMENT FOR OCCUPATION AND CULTIVATION OF LAND BY GRANTEE DURING GRANTOR'S LIFETIME.—A subsequent agreement between the grantor and the grantee, whereby the latter, in consideration of being given the possession of the land with his family during the grantor's lifetime, with the right, for himself, his heirs, executors, and administrators, to use, occupy, and enjoy it during that period, undertook to occupy, cultivate, and improve it, and to pay the grantor a stated annual amount during his lifetime, will not be construed as intended to destroy or modify the effect of the prior delivery in escrow.

ID.—CONTRACT FOR PERSONAL SERVICES—PERFORMANCE BY FAMILY OF GRANTEE.—Such contract did not require the performance by the grantee, personally and individually, of the obligations to occupy, cultivate, and improve the land, within the meaning of the rule that contracts to perform personal acts are discharged by the death or disability of the person who was to perform the acts. That rule does not apply where the services are of such a character that they may be as well performed by others, nor where the contract by its terms shows that performance by others was contemplated. The obligations to occupy, cultivate, and improve the land and to pay the stipulated annual amount could be performed by the surviving members of the family of the grantee. This construction of the contract finds support in the fact that for several years after the death of the grantee the grantor accepted such payments from them.

ID.—ORAL TRANSFER OF LIFE ESTATE—PART PERFORMANCE BY GRANTEE—SPECIFIC PERFORMANCE.—Properly construed, such contract was not executory, but was an oral present transfer of the life estate of the grantor, in consideration of certain promises upon the part of

the grantee. Such oral contract cannot be set aside by the grantor on the ground that the obligation of the grantee is not the subject of specific performance, if there has been such part performance as to take the case out of the operation of section 1971 of the Code of Civil Procedure.

ID.—ACTS CONSTITUTING PART PERFORMANCE.—The taking possession of the land under such contract by the grantee and the performance by him and his successors of the obligations of payment and improvement of the land were sufficient part performance to overcome the want of a written transfer.

ID.—ORAL TRANSFER OF LIFE ESTATE—PART PERFORMANCE MAY RENDER EFFECTUAL.—An oral transfer of a life estate in land may be rendered effectual by the taking of possession and the performance by the grantee of other acts in reliance upon the grant.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order refusing a new trial. Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

J. F. Quinn, and L. F. Puter, for Appellant.

Mahan & Mahan, for Respondent.

SLOSS, J.—Patrick Husheon brought this action against Mrs. J. W. Kelley to recover the possession of a tract of land in Humboldt County, the plaintiff alleging that he was the owner of said land and entitled to its possession. The defendant answered and filed a cross-complaint. In the capacity of administratrix of the estate of James W. Kelley, deceased, she also filed a complaint in intervention in which she set up the same affirmative matter theretofore alleged in the answer and cross-complaint. The nature of these allegations will sufficiently appear from the following summary of the findings, which were in accordance with the pleadings interposed by the defendant and intervener.

The court found these facts: Patrick Husheon was the uncle of James W. Kelley. In 1899 Husheon, who was then the owner of the land in controversy, in consideration of love and affection, made, signed, and acknowledged a grant, bargain, and sale deed whereby he conveyed said lands to said James W. Kelley. In the following year, 1900, Husheon delivered said deed to C. H. Boynton, with instructions to hold

said deed until his, Husheon's death and then to deliver the deed to James W. Kelley. At the time of such delivery to Boynton, Husheon surrendered the absolute control and dominion over the deed and delivered it to Boynton, without any power to withdraw the deed or exercise any control or dominion over it. Boynton accepted the deed and held it until April, 1906, when Husheon wrongfully and without the consent of Boynton or Kelley obtained possession of the deed and destroyed it.

In 1904 Husheon, who was then seventy-one years of age and physically weak and infirm, represented to James W. Kelley, his nephew, that the lease then covering the land would expire on January 1, 1905, and that he, Husheon, did not care to again lease said land, but in consideration of the love and affection he bore toward said Kelley, he desired Kelley, together with his family, consisting of his wife and four children, to go upon said land and occupy and possess the same during the remainder of the lifetime of said Husheon, and cultivate and improve said land, and pay said Husheon the sum of five hundred dollars per year as long as Husheon lived, and upon the death of said Husheon the absolute title to said land would, by virtue of said agreement to be entered into and said deed so delivered to Boynton, vest in said James W. Kelley, his heirs, executors, and administrators. Pursuant to said representations Husheon agreed with said Kelley that if Kelley would enter into the possession and occupancy of said lands on or about January 1, 1905, and farm and conduct the same and improve said land and pay the said Husheon the sum of five hundred dollars per year during the lifetime of said Husheon, in consideration thereof the said James W. Kelley, his heirs, executors, and administrators were to have the possession of, occupy, use, and enjoy said land, together with the profits thereof, during the lifetime of said Husheon, and on the death of said Husheon the absolute title in fee simple to said lands would vest in said James W. Kelley, his heirs, executors, administrators, or assigns. Said James W. Kelley accepted said agreement, and in consideration thereof and in accordance therewith he with his family entered into the possession and occupancy of said lands and made extensive, permanent and valuable improvements thereon, and at all times until his death fully performed the terms of the agree-

ment on his part to be performed. James W. Kelley died on December 26, 1907. At that date he was in possession of said lands with his wife and children, under and by virtue of said agreement. The heirs of said James W. Kelley have at all times since his death continued in possession and use of said land and have continued to improve it and have fully performed all the terms of said agreement on their part to be performed, except that they have not paid the said Husheon the sum of five hundred dollars for the year 1909, for the sole reason that said Husheon has at all times since January 1, 1909, refused to accept the said sum of five hundred dollars, but the heirs of James W. Kelley and his admininstrator have at various times tendered to said Husheon five hundred dollars, in accordance with the terms of said agreement. There is a further finding that James W. Kelley, at the time of his death, was the owner in fee of the lands in question, "subject to a life estate of Patrick Husheon therein." The court drew conclusions of law as follows: That James W. Kelley at the time of his death was, under and by virtue of the deed delivered to Boynton, the owner in fee of the land, subject to a life estate of Patrick Husheon therein; that James W. Kelley was at the time of his death entitled to the possession of said lands during the lifetime of said Patrick Husheon upon payment to said Husheon during his lifetime of the sum of five hundred dollars per year; that Patrick Husheon has no right, title, or interest in or to said lands, except the right to the payment of five hundred dollars per year during his life, and in default of such payment, then to the immediate possession of said lands and to the continued possession thereof during his life; that the plaintiff should be enjoined and debarred from asserting any claim to said land, except the right last stated. It is also declared that the defendant and intervener are entitled to a decree requiring plaintiff to make, sign, and acknowledge a grant, bargain, and sale deed to replace the destroyed deed heretofore deposited with Boynton, and to have such deed deposited in escrow with a bank designated by the court, to be held by said bank upon the terms and conditions governing the original deposit of the deed with Boynton.

Judgment was entered in accordance with these conclusions, and the plaintiff appeals from the judgment and from an order denying his motion for a new trial.

There is no attack upon the sufficiency of the evidence to support any of the findings, except the one which declares that the title in fee, subject to a life estate in Husheon, belongs to James W. Kelley. The same declaration is also found among the conclusions of law. Whether it be treated as a fact found by the court, or as a legal conclusion drawn from the other facts, we do not doubt that it correctly declares the ownership of the land. It is found, upon evidence whose sufficiency, as we have said, is unchallenged, that in 1900, Husheon deposited in escrow his deed conveying the premises, with instructions to deliver the same, upon his death, to Kelley, the grantee named. He retained no power to withdraw the deed or to exercise any control over it. Since the decision in *Bury* v. *Young,* 98 Cal. 446, [35 Am. St. Rep. 186, 33 Pac. 338], it has been settled law in this state that a transaction of the kind outlined has the effect of vesting the title immediately in the person named as grantee in the deed, subject only to a life interest in the grantor. (*Moore* v. *Trott,* 156 Cal. 353, [134 Am. St. Rep. 131, 104 Pac. 578].) The title thus vested in Kelley was not limited or otherwise affected by the agreement made four years later. A mere oral contract cannot operate to transfer title to real property. (Civ. Code, sec. 1091; *Cranmer* v. *Porter,* 41 Cal. 462.) Furthermore, the agreement of 1904, fairly construed, was not intended to destroy or modify the effect of the prior delivery in escrow. On the contrary, the later transaction recognized the validity of what had been done, and sought to amplify it by providing for something additional, i. e., the transfer of the right of possession during the grantor's life. The case is, therefore, readily distinguishable from *Keyes* v. *Meyers,* 147 Cal. 702, [82 Pac. 304], where the later agreement was in writing, and contained provisions inconsistent with the grantee's present ownership of a remainder or other title in the land.

The only other questions in the case relate to the right of possession, and the solution of these questions depends upon the effect of the agreement of 1904, and of the things occurring after the making of that agreement.

We do not think the contract required the performance by James W. Kelley, personally and individually, of the obligations to occupy, farm, and improve the lands within the meaning of the rule that contracts to perform personal acts are

discharged by the death or disability of the person who was to perform the acts. (9 Cyc. 631; *Spalding* v. *Rosa,* 71 N. Y. 40, [27 Am. Rep. 7].) The rule does not apply where the services are of such a character that they may be as well performed by others (*Janin* v. *Browne,* 59 Cal. 37), nor where the contract, by its terms, shows that performance by others was contemplated. The ability to comply with the obligation to pay the plaintiff five hundred dollars per year was of course not limited to Kelley alone. And the framework of the entire agreement evidences that the parties were looking to the occupancy and farming of the lands, not merely by Kelley, but by his family as well. While the agreement was made with Kelley, it seems sufficiently clear that the plaintiff desired to provide a home, not only for his nephew, but for the wife and children of the latter. Some support is afforded this construction by the circumstance that, for several years after Kelley's death, Husheon accepted annual payments of five hundred dollars, and, during this time, made no objection to the occupancy of the lands by Kelley's heirs, or to their performance of the obligations assumed by him. We are not to be understood as saying that the occupancy, improvement, and cultivation of the lands could be turned over to strangers, but merely that the contract would be satisfied if either Kelley or the surviving members of his family executed these functions.

The case, therefore, presents this situation: The defendant is in possession under an oral agreement binding Kelley and his successors to do certain things, which they have done so long as the plaintiff would accept, and are willing to continue to do. If the relief sought by the defendant and intervener, and granted by the decree, is the specific performance of an agreement to execute a lease for the life of the plaintiff, the difficulties in the way of sustaining the granting of such relief are serious, if not insurmountable. For, even though the obligation to farm and improve the land was not personal, in the sense that it should be performed only by J. W. Kelley, yet it might be viewed as such an undertaking as a court of equity would not undertake to specifically enforce. (*Stanton* v. *Singleton,* 126 Cal. 657, [47 L. R. A. 334, 59 Pac. 146]; *Los Angeles etc. Co.* v. *Occidental Oil Co.,* 144 Cal. 528, [78 Pac. 25].) And if specific performance could not be decreed against the party seeking such relief, it will not be awarded

in his favor. (Civ. Code, sec. 3386; *Cooper* v. *Pena,* 21 Cal. 404; *O'Brien* v. *Perry,* 130 Cal. 526, [62 Pac. 927].) This objection would not apply where the acts whose performance was not the subject of compulsion by equitable decree have been in fact fully performed. (*Thurber* v. *Meves,* 119 Cal. 35, [50 Pac. 1063, 51 Pac. 536].) But here there had been no such full performance. Kelley and his successors were bound to continue performance during plaintiff's life, and of course their obligation could not be said to be complete until his death.

But we think the findings, if construed, as they should be, in support of the judgment, do not set forth a case of an executory contract which has to be enforced, but rather one of an oral present transfer of a life interest, in consideration of certain promises upon the part of the grantee. The finding is that it was agreed that, if Kelley would enter into possession of the lands with his family, and do the things agreed upon, said "Kelley, his heirs, executors and administrators were to have the possession of, occupy, use and enjoy said land, together with the profits thereof, during the lifetime of said Husheon." This was an immediate grant of a life estate. No further transfer or conveyance, whether by way of lease or otherwise, seems to have been contemplated. An executed written conveyance of real estate, in consideration of the promise by the grantee to perform services, cannot be set aside by the grantor on the ground that the obligation of the grantee is not the subject of specific performance. (*Norris* v. *Lilly,* 147 Cal. 754, [109 Am. St. Rep. 188, 82 Pac. 425].)

Where the conveyance is oral, instead of written, the case is not different, if there has been such part performance as to take the case out of the operation of section 1971 of the Code of Civil Procedure. There can be no doubt that the taking of possession by Kelley and the performance by him and his successors of the obligations of payment and improvement of the land, were sufficient to overcome the want of a written transfer. It is well settled in this state and elsewhere that "a gift of real estate may be made by parol, if possession is given and taken under such gift, and acts done by the donee to carry out the purpose of the gift." (*Bakersfield T. H. Assoc.* v. *Chester,* 55 Cal. 98; *Manly* v. *Howlett,* 55 Cal. 94; *Burlingame* v. *Rowland,* 77 Cal. 315, [1 L. R. A. 829, 19 Pac. 526]; *Neel* v. *Neel,* 80 Va. 584; *Wamsley* v. *Lincicum,* 68 Iowa 556, [27

N. W. 740].)   If a grant of the fee may thus be effectively completed by an oral transfer, coupled with a taking of possession and the performance of other acts in reliance upon the grant, undoubtedly a life interest may be similarly transferred.   In *Manning* v. *Franklin*, 81 Cal. 205, [22 Pac. 550], the court held that the defendant was entitled to retain the possession, which he had taken under an agreement that if he would erect a house on plaintiff's land, pay certain charges, and care for the plaintiff in sickness, he might occupy said house during the natural life of the plaintiff.   The defendant had, until plaintiff brought the action to oust him, complied with the terms of the contract.   In answer to the objections that the contract was a lease and that specific performance could not be enforced, the court said: "This is in no sense a lease of the property, but a sale of a life estate therein. There is no attempt to compel a specific performance of the contract, and therefore the question whether a contract, the consideration of which is personal services could be specifically enforced does not arise."   Here we find the essential difference between the case at bar and that of *O'Brien* v. *Perry*, 130 Cal. 526, [62 Pac. 927], where the agreement was that, if the defendant would do certain things, the plaintiff "would give and grant to her the right to live with her said family" upon his premises.   This was not a present transfer, but an agreement to make one in the future, and this agreement, under the principles above discussed, could not be specifically enforced.

The court, therefore, properly held that the administratrix and heirs of James W. Kelley were entitled to the possession of the property in controversy.   It was further proper for the court, in its decree establishing the right of the respondents, to protect the right of the plaintiff to the continued performance of the obligations which were the consideration for the transfer of his life estate.   (*Neel* v. *Neel*, 80 Va. 584; *Wamsley* v. *Lincicum*, 68 Iowa 556, [27 N. W. 740].)   It was to this end that the decree provided that the plaintiff was entitled to the payment of five hundred dollars per year, payable as agreed, during his life.   But in this no regard was had to the agreement on Kelley's part to farm and conduct the lands. The plaintiff is entitled to insist on compliance with this obligation as well as with the agreement to pay five hundred

dollars per year. This omission may, however, be remedied by a slight modification of the judgment.

It is ordered that the judgment be modified by adding thereto, after the fifth paragraph, the following: "It is further ordered, adjudged and decreed, notwithstanding anything hereinbefore contained, that, if the administratrix or heirs of said James W. Kelley shall, at any time during the lifetime of said Patrick Husheon, fail to occupy, farm, or conduct said lands, said Patrick Husheon shall have the same rights and remedies hereinbefore declared to belong to him upon default in the payment to him of the sum of $500 per year"; and, as so modified, the judgment is affirmed. The order denying plaintiff's motion for a new trial is affirmed.

Shaw, J., and Angellotti,, J., concurred.