[Civ. No. 2514. Second Appellate District.—May 13, 1918.]

## R. M. BEKINS, Respondent, v. ELLA SMITH, etc., Appellant.

UNLAWFUL DETAINER—LANDLORD AND TENANT—EXISTENCE OF RELA-
TION ESSENTIAL.—The relation of landlord and tenant is a neces-
sary prerequisite to an action for unlawful detainer under section
1159 of the Code of Civil Procedure.

LIFE ESTATE—ORAL TRANSFER—WHEN EFFECTUAL.—An oral transfer
of a life estate in land may be made effectual by the taking pos-
session of and the performance by the grantee of acts in reliance
upon the grant.

ID.—TERMINATION PRIOR TO DEATH OF LIFE TENANT.—It is not essential
to the creation of a valid life estate that there shall be no condi-
tion imposed which may terminate the estate in some contingency
prior to the death of the grantee.

ID.—USE OF LAND FOR RELIGIOUS PURPOSES—BREACH—REMEDY.—An
agreement of an owner of land to let another use the land as long
as she should continue to conduct the same character of religious
services as theretofore creates more than a mere tenancy at will, and
in order to have the estate forfeited for breach of condition, it
must be done in some proceeding other than that of unlawful de-
tainer.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Fred H. Taft, Judge.

The facts are stated in the opinion of the court

R. D. McLaughlin, J. B. McLaughlin, and Earl Rogers, for
Appellant.

Winslow P. Hyatt, and David G. Kling, for Respondent.

JAMES, J.—Plaintiff brought this action to recover pos-
session of certain real property described in the complaint,
alleging that the defendant unlawfully detained the same. In
the complaint it was alleged that under the lease or agree-
ment made between the parties the defendant occupied the
relation of tenant at will toward the plaintiff. It was further
alleged that the requisite notices required by the code had
been given to terminate the tenancy. The answer filed by the
defendant put in issue all of the material matters alleged in

the complaint. Findings and judgment were in favor of the plaintiff, from which judgment this appeal is taken.

The principal question presented is as to whether under the evidence submitted by the plaintiff, the relation of landlord and tenant was shown to have existed between the plaintiff and the appellant; or whether under such testimony it should necessarily be concluded that the appellant held a life interest in the real property, subject to be terminated only in certain contingencies. That the establishment of the relation of landlord and tenant between the parties is a necessary prerequisite to the prosecution of an action for the unlawful detainer of real property under the provisions of section 1159 et seq. of the Code of Civil Procedure seems not to be disputed. (*Johnson* v. *Chely,* 43 Cal. 299; *Richmond* v. *Superior Court,* 9 Cal. App. 62, [98 Pac. 57].) The real property in question was purchased by Martin Bekins, the father of the plaintiff, title being taken in the name of the plaintiff, no consideration appearing to have been paid by her. For the purposes of this action, Martin Bekins appears to be the real party at interest on the plaintiff's side of the case. Martin Bekins testified that he first met the defendant Ella Smith Trull at her residence in the city of Los Angeles, in November, 1913; that defendant was engaged in preaching the Christian gospel at that time; that he became interested in the services conducted by the defendant and offered to help purchase another piece of property in the city of Los Angeles for her use; that he went with the said defendant and two or three others to look at the property finally purchased. We now quote from the text of the testimony of this witness, as shown in the bill of exceptions: "A few days later I told the defendant I would purchase the property and give her the free use of it for so long as she conducted her services as she had been doing, and was doing at that time. I meant the religious meetings. I don't remember just what she said. She must have thanked me. A short time later I again stated my offer at Mr. Schultz's house. Later, at Mr. Preston's office, the defendant not being present, it was arranged that I pay, and I did pay the sum of three thousand five hundred dollars, and Mr. I. H. Preston put in a lot at five hundred dollars, which was the full purchase price of the property. The defendant went into possession at or about the time the lot was deeded to the plaintiff. She has remained in possession ever since. The

line of services conducted at her meetings at that time was much like other religious services. I did not attempt to establish an arbiter who should say that the religious services were or were not conducted as they had theretofore been. There was nothing further said than that as long as she conducted the services on the line that she had been conducting them and did not depart from it she could have the free use of it. In April or May, 1916, I attended some of the services where she said in public that she was going to give birth to a Christ on the third day of June at 5 o'clock. I think it was an immaculate conception, as she was long past the age she said.'' Witness I. H. Preston testified for the plaintiff as follows: ''I met Martin Bekins on or about the thirteenth day of November, 1913, at my office. There were some people whose names I do not recall who were discussing the purchase of that property, or a property for her work, and it appears that they were going to form an organization to carry on the work. I said I would contribute a lot worth five hundred dollars. It subsequently developed that they could not do anything. They found out that they could buy the lot for four thousand dollars, make a small payment on it, and pay the balance in installments, but Mrs. Smith refused to have anything to do with it. There the matter ended until Mr. Bekins proposed to buy it and asked me if I would contribute if he bought it. Mr. Bekins told me that his purpose was to let her carry on her work there so long as she carried it on along the lines she was then, and if that was for her lifetime, why then she would remain during that time, and if she left a worthy successor, her successor might carry on the same work. Those were the circumstances under which I contributed.'' It appears, then, that the property in question was purchased expressly for the use of the defendant Ella Smith Trull and that Bekins was not the only person who contributed to make the purchase. Preston's lot, valued at five hundred dollars, was a part of the donation. The defendant last named entered immediately into possession of the premises and continued to occupy the same up to the time of the commencement of the action and the trial. On her behalf an offer was made to show that she had expended considerable money in the making of improvements, such as buildings for use of the religious organization of which she was the head, but the trial court refused to allow the testimony. It has been held in this state that an oral transfer of a life estate in land may be made effectual by the taking

possession of and the performance by the grantee of acts in reliance upon the grant. (*Husheon* v. *Kelley*, 162 Cal. 656, [124 Pac. 231].) Other cases holding that a life estate may result from an oral agreement are: *Manning* v. *Franklin*, 81 Cal. 205, [22 Pac. 550]; *Norris* v. *Lilly*, 147 Cal. 754, [109 Am. St. Rep. 188, 82 Pac. 425]. The same holding also where the estate is conferred as a gift (*Bakersfield Town Hall Assn.* v. *Chester*, 55 Cal. 98). It is not essential to the creation of a valid life estate that there shall be no condition imposed which may terminate the estate in some contingency prior to the death of the grantee. Referring to estates for uncertain periods, which are not inheritable, or at will, but may last for life, Mr. Reeves in his work on Real Property, volume 1, page 633, says: "It is to be reiterated and emphasized here that such interests as these are life estates. Indefinite duration that may be during a life, incapability of being inherited, and indeterminability merely at will usually place an ownership of realty within the category of life interests. Such are estates to A while he continues to live on the land, to a man and his wife during coverture, to a widow so long as she remains unmarried, to B until he ceases to carry on a specified business, to X while a designated tree stands, and to Y during his residence abroad. Though such an ownership may quickly terminate because of the happening of the specified event, it is a life estate, governed by all the rules and principles of life estates, as long as it continues." Mr. Washburn in his text on Real Property, volume 1, page 102, adds: "This is rather a class of estates, and embraces all freeholds which are not of inheritance, including estates held by the tenant for the term of his own life, or for the life or lives of one or more other persons, or for an indefinite period which may endure for the life or lives of persons in being, and not beyond the period of a life." Section 1161 of the Code of Civil Procedure, in the first paragraph, provides that "A tenant of real property, for a term less than life, is guilty of unlawful detainer, . . . " etc.

From what has been stated in the foregoing, it must appear plain that, conceding that the evidence of Martin Bekins and Preston was sufficient to show an intent that the defendant Ella Smith Trull should have the absolute possession of the real property so long as she should live, or so long as she should continue to conduct the same character of religous ser-

vices as theretofore, then no other circumstances are shown which would render such agreement and transfer invalid. We think that the evidence clearly establishes that the character of interest held by the said defendant was more than that of a mere tenant holding at the will of the landlord Martin Bekins. It will be noted that Bekins in this testimony did not claim that he was to be the sole judge as to whether the services conducted by the said defendant at the new location were of the same character as those which had theretofore been conducted by her. The question as to whether the subsequent services were of the character required depended upon the establishment of the fact itself, and a forfeiture of the interests of the defendant could not be worked at the arbitrary whim of Martin Bekins. In our opinion, the undisputed evidence of Bekins and of Preston, his witness, showed the intent of Bekins and Preston to have vested in the defendant Ella Smith Trull a life estate in the real property described in the complaint, defeasible only upon breach of the condition named. As the transfer rested in parol, we think it was competent for the defendant to show all of the things which she did in compliance with the conditions imposed upon her and by way of acceptance of the donation. The offered testimony to show the expenditure of money in erecting buildings or improvements having to do with affording facilities for the holding of religious services was relevant and proper to be considered. It may be that the condition upon which defendant's right to the possession of the property depends has been broken and that the plaintiff is entitled to have the estate of the defendant declared forfeited. If so, it must be done in some proceeding other than that brought to secure the summary remedy afforded by the code to a landlord whose tenant has breached some condition of his lease.

The judgment appealed from is reversed.

Conrey, P. J., and Works, J., *pro tem.,* concurred.