[L. A. No. 21601. In Bank. June 15, 1951.]

THOMAS E. GREEN, Appellant, v. JAMES O. BROWN et al., Respondents.

Jefferson & Jefferson, Bernard S. Jefferson and Martha Malone Jefferson for Appellant.

Oscar S. Elvrum for Respondents.

CARTER, J.—Plaintiff and his wife, Etta Green, were the owners as joint tenants of real property, with a home thereon in which they were residing. Living with them were defendants, James Brown and his wife, Zephrene, who was the daughter of Etta by a former marriage. The Browns were paying $25 a month to the Greens. In 1941 the Greens conveyed the property to the Browns and the parties continued to occupy the home, the Browns agreeing to pay the Greens $20 a month on an indebtedness against the property and half the taxes and utilities.

The conveyance above mentioned was made by a deed in which the Greens granted to the Browns the title to the property "subject, however, to the Life Estate hereinafter reserved . . ." The reservation clause to which reference is made reads: "RESERVING and EXCEPTING, however, a Life Estate in the Grantors above named in all of the above described property, and the right to use, occupy and enjoy the same and to receive the rents, issues and profits therefrom during the term of their natural lives."

In 1943, Etta Green died. Plaintiff continued to live in the house with the Browns. He remarried and difficulties arose between him and the Browns; the instant action followed.

The trial court determined that under the deed the death of Etta terminated her life estate in an undivided half interest in the property and plaintiff had an estate for his life in an undivided half interest in the property. This is predicated on the proposition that the reservation in the deed was of a life estate in an undivided half interest in each of the grantors, making the grantors tenants in common of a life estate in the property; that if the life estate were in joint tenancy then the survivor would have a life estate in the whole property. This construction of the deed is predicated on the rule that a joint tenancy is created by a transfer to two or more persons when expressly declared by the transfer to be such. (Civ. Code, §§ 683, 686.) In the light of that rule other factors must be considered. ▉ The general rule is stated as follows: "A gift to two or more persons for their lives is ordinarily construed as creating an estate or estates to endure, not so long only as they are all alive, but until

the death of the last survivor. ■ And a gift to a person for the lives of himself and another clearly creates an estate in his favor to endure until the death of the survivor, the donee having an estate for his own life upon the death of such other person, while if the donee is the first to die, the estate then assumes the characteristics of an estate pur autre vie.'' (Tiffany, Real Property, § 49.) (See *Flagg* v. *Badger,* 58 Me. 258; *Kenney* v. *Wentworth,* 77 Me. 203; *Saunders* v. *Saunders,* 373 Ill. 302 [26 N.E.2d 126, 129 A.L.R. 306]; *Dow* v. *Doyle,* 103 Mass. 489; *Douglas* v. *Parsons,* 22 Ohio St. 526; *Ogle* v. *Barker,* (Ind.App.) 63 N.E.2d 432; *Glover* v. *Stillson,* 56 Conn. 316 [15 A. 752]; *Corbin* v. *Manley,* 291 Ky. 289 [164 S.W.2d 394].) ■ The words of the reservation are that a life estate is saved to both grantors in all of the property and the right of enjoying the same (all of it) during the term of ''their lives.'' That is, the lives of both of them must have expired before any part of the use of the property is lost to either of them. Those words are equivalent to the phrases ''joint tenancy'' or ''to the survivor of them.'' This construction is fortified by the statutory provision that reservations are ''to be interpreted in favor of the grantor.'' (Civ. Code, § 1069.) There is nothing in *Heiden* v. *Howes,* 77 Ohio App. 525 [67 N.E.2d 641], or *Guyer* v. *London,* 187 Okla. 326 [102 P.2d 875], relied upon by defendants, contrary to the holding of the foregoing authorities.

■ Defendants contend that they acquired title to the property by adverse possession because they have been in possession and paid half the taxes. Plaintiff has also been occupying the property. There is no finding on any issue of adverse possession. The trial court found: ''That it is true that the cross-complainants and defendants, James O. Brown and Zephrene C. Brown, and each of them, have had the continuous actual possession of said Lot one (1), commonly known as 2202 Juliet Street, ever since December 15, 1941, and that they, and each of them, are now in actual possession of said real property.'' But, no other elements of adverse possession appear. The court found that Etta died and ''said Life Estate of Etta C. P. Green in said [property] ipso facto terminated and vested in said remaindermen, James O. Brown and Zephrene C. Brown, as Joint Tenants, on the date of the death of said decedent,'' which is simply a conclusion of law based upon the court's erroneous interpretation of the deed, rather than a finding of adverse possession. Moreover, it is found that after Etta's death plaintiff had, pursuant to the

deed, a life estate in an undivided half interest in the property.

In its judgment the court determined that plaintiff's life estate in a half interest is further limited in that it is ". . . in all respects subordinate to the paramount actual possession of said property theretofore delivered to said James O. Brown and Zephrene C. Brown, as Joint Tenants, and exclusively limited to said Thomas E. Green's sole occupancy and personal use during the period of his natural life, and not otherwise." That limitation is apparently predicated on its conclusions of law that plaintiff "does not come into Court in the above entitled cause with clean hands, and he is equitably estopped from prevailing in this proceeding and he is guilty of laches." That conclusion is presumably based on the findings that a fiduciary relationship existed between Etta and plaintiff and defendants; that at the time of the marriage of Etta and plaintiff, the latter was in "poor financial circumstances" while Etta had a sum of money which was later increased; that defendants, with plaintiff's consent, have been occupying the property with plaintiff and Etta on a "share and share alike basis"; that in 1942, plaintiff and Etta abandoned a homestead they had declared on the property and defendants made a homestead declaration on the property at plaintiff's and Etta's "recommendations and suggestions"; that plaintiff's "aforesaid remaining vested life estate is in all respects exclusively limited to the sole occupancy and personal use of said [plaintiff] during the period of his natural life, and not otherwise . . .

"That it is true that thereafter the defendants . . . in the utmost good faith, proceeded to improve said premises with the consent of the plaintiff . . . and on the 21st day of May, 1945, the parties involved in this action made, executed and delivered that certain unrecorded Deed of Trust covering said real property from Thomas E. Green, a widower, and James O. Brown and Zephrene C. Brown, husband and wife, as Trustor, to Los Angeles Trust and Safe Deposit Company, a California corporation, to secure an indebtedness in favor of Security-First National Bank of Los Angeles in the sum of $2,500.00 and other amounts payable under the terms thereof.

"That it is true that thereafter a demand was made by said Bank for an additional sum of $200.00 for Termite Inspection and control of said premises, and said loan was later cancelled.

". . . that the defendants . . . discussed the contemplated

loans with the plaintiff . . . and he recommended that they
secure a loan for the improvement of said property from
another source so that the defendants . . . could fully enjoy
their lifetime home in said premises; . . . that the defend-
ants . . . obtained $1600.00 from an endowment Life Insur-
ance Policy and borrowed $500.00 from the Postal Credit
Union of Los Angeles, without using the plaintiff's . . .
credit or encumbering said premises; that . . . defendants,
. . . relying upon the statements of plaintiff, . . . that they
were in possession of their permanent home, thereafter ex-
pended, in the utmost good faith, said sum of $2100.00, and
other additional amounts, in repairing, remodeling and im-
proving said premises . . ."

Plaintiff asserts that the evidence does not support those
findings. From defendants' evidence it appears that they
have been living with the Greens, plaintiff and Etta, since
the 1920's. When the home, a nine-room house, the property
here involved, was acquired in 1927, they continued to live
together under a "share and share alike" basis, as the de-
fendants describe it, whereby the living expenses and expenses
of the property were shared by both families. Prior to the
execution of the deed in 1941, which conveyed the property
from the Greens to the Browns, the latter had been paying
the Greens $25 per month, and thereafter they paid less, but
they also paid the balance of an indebtedness against the
property. In 1941, when the deed was made, and thereafter,
defendants were assured by Etta and plaintiff that they would
have a permanent home on the property and they would
"share and share alike." Defendants have paid, as found by
the court, half of the city and county taxes on the property
ranging from $138 to $152 each year from 1942 to 1948.
Shortly after its execution, the Greens abandoned a homestead
they had declared on the property, and at their suggestion,
defendants declared a homestead on it. After Etta's death
in 1943, plaintiff told defendants that things would continue
as usual, "share and share alike" and that they had a perma-
nent home on the property. He ate his meals with them and
the taxes were borne equally. Early in 1945, they consulted
with him with reference to improvements on the property
consisting of redecorating and new furniture. He agreed that
they should go ahead and do as they wished. Money was
borrowed and the improvements were made, consisting of
painting the outside of the house, redecorating some of the
interior, and purchasing new furniture. The old furniture

was sold with plaintiff's consent and he received the proceeds of the sale. The improvements cost about $4,000. At the time the improvements were made plaintiff said he would need only one room in the house. He repeatedly stated after Etta's death that if he remarried, he would not bring his new wife into the house to live. He remarried in April, 1945, but did not reveal his marriage until the following September, after the improvements were made, at which time he stated that he wanted to move his wife into the house. Defendant, Mrs. Brown, testified, over plaintiff's objection on the ground of irrelevancy, that they would not have made the improvements if they knew he was going to remarry.

This evidence seems sufficient to support the findings. Although it may be, to some extent, consistent with the life estate reserved in the deed, and thus not a basis for a restricted occupancy by plaintiff, yet it is also susceptible of the inference, that even during the plaintiff's life, as well as after his death, defendants were to have the use and occupancy of the property as a home. The long course of conduct and assurances by plaintiff and Etta could lead defendants to believe that they had a permanent home and plaintiff would not interfere with their occupancy of it as shown by the pattern which had long been followed. There is no direct evidence, as stated by plaintiff, that defendants relied upon plaintiff's assurances and conduct in making the improvements and other expenditures, but we believe it may be inferred. It appears from the evidence that most of the assurances were made several years before the improvements were made, but in view of the fiduciary relationship between the parties, the absence of any withdrawal or repudiation of the arrangement, and plaintiff's acquiescence in the improvements, we cannot say that the trial court was unjustified in its conclusion.

Plaintiff asserts that the following elements of an estoppel are not present here: (1) No showing that plaintiff had any reason to believe defendants were making the improvements in reliance on his assurances; (2) Defendants were as fully aware as plaintiff, or should have been, of the true status of the title (a life estate in Etta and plaintiff); (3) There is no showing of a detriment suffered by defendants in that the improvements were beneficial to defendants' remainder interest and were of slight cost in comparison with the market value of the property as well as its rental value, and were temporary in character.

From the evidence presented, a legal theory upon which

a judgment may be based is, that the Greens made an oral gift to defendants of a right to occupy the property with plaintiff; and that defendants accepted said gift by remaining in possession of the property and making expenditures for improvements thereon. An estoppel would then arise against plaintiff to rely upon the statute of frauds or repudiate the gift. ■ The rule is stated as follows: "It has been previously explained that the part performance required by the courts as a prerequisite of specific enforcement is not necessarily any part of the agreed exchange for the defendant's performance that is compelled. It may be merely action in reliance on the defendant's promise. That is particularly evident in the case of a promise to make a gift of land; there is no agreed exchange of any kind, otherwise the transaction would not be a gift. These promises become specifically enforceable as soon as the promisee has so far acted in reliance on the promise as to make it very unjust (perhaps again called a 'virtual fraud') not to compel execution of the gift." (Corbin on Contracts, § 441.) (See *Peixouto* v. *Peixouto*, 40 Cal.App. 782 [181 P. 830]; *Howard* v. *Stephens*, 38 Cal.App. 296 [176 P. 65]; *Kinsell* v. *Thomas*, 18 Cal.App. 683 [124 P. 220]; Rest., Conts., § 197; *Kennedy* v. *Scally*, 62 Cal.App. 367 [217 P. 96]; *Burris* v. *Landers*, 114 Cal. 310 [46 P. 162]; *Manly* v. *Howlett*, 55 Cal. 94; *Anson* v. *Townsend*, 73 Cal. 415, 417 [15 P. 49]; *Husheon* v. *Kelley*, 162 Cal. 656 [124 P. 231]; *Alpha Stores, Ltd.* v. *Croft*, 60 Cal.App.2d 349 [140 P.2d 688]; *Bekins* v. *Smith*, 37 Cal.App. 222 [174 P. 96].)

Plaintiff urges, however, that there was no showing that he had reason to believe defendants relied upon the Greens' assurances and gift. He cites *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279 and *Lindley* v. *Blumberg*, 7 Cal.App. 140 [93 P. 894]. Those cases involved silence on the part of the owner of property, while another claims ownership and changes his position. There is no element of gift in those cases.

■ Next, plaintiff relies upon similar cases (*Mott* v. *Nardo*, 73 Cal.App.2d 159 [166 P.2d 37], *Killian* v. *Conselho Supremo etc. Portugueza*, 31 Cal.App.2d 497 [88 P.2d 214], and *Raynor* v. *Drew*, 72 Cal. 307 [13 P. 866], for the proposition that in order to rely on that kind of estoppel the one urging it must be ignorant of the true state of the title. Where, however, there is a parol gift, that principle has no application, for it is assumed that at the time the gift was made, the donor had title and the donee knew, yet the latter accepted it as a gift and treated it as his property.

A more serious objection to defendants' position is that they have not suffered sufficient detriment to establish an estoppel—that the outlay by them was trifling and not lasting, or to phrase it in the language of part performance, there has not been enough. The reasonable rental value of the property was $100 per month, and its market value was $25,000 at the time the witnesses were questioned. The court found that defendants expended $2,100 and "other additional amounts" in improving the property. There is evidence that they expended $4,100. In addition, the court found that they paid half the taxes on the property for the years 1942 to 1948, and the total taxes for some years were as follows: 1946—$152.39; 1947—$138.01; 1948—$142.40. And, also, it is found that they paid an indebtedness against the property amounting to $886.42. The improvements consisted of painting the exterior of the house, redecorating a portion of the interior, laying carpets, replacing furniture and the removal of some inside fixtures. The rule is stated in *Burris* v. *Landers, supra,* 114 Cal. 310, 315 that: ". . . the expenditures . . . must be in the nature of lasting benefits and improvements to the land, tending to enhance its value over and above the value of the use of the property to the plaintiff. . . . Slight and temporary improvements, or trivial outlays, made to suit the taste or convenience of the occupant, do not raise an equity in favor of the donee . . . for, if the value of the expenditures made by the occupant does not exceed the benefit to him of the use of the land without charge or rental, then, generally, and in the absence of other circumstances of hardship shown, he not only will not have been injured, but will in fact have been advantaged by the promises made." (See, also, *Jonas* v. *Leland,* 77 Cal.App.2d 770 [176 P.2d 764].) We believe that under all the circumstances here presented, including the fiduciary relationship between the parties, the rule has been satisfied.

Plaintiff urges that the judgment restricting his use of the property is erroneous. We hold that the judgment is erroneous in declaring that the deed reserved a life estate for plaintiff in only an undivided half interest in the premises. It further contains the clause heretofore quoted, that plaintiff's interest is "subordinate" to the "paramount actual possession" of defendants and is limited to his personal use. Precisely what is meant by such an adjudication is difficult to ascertain. There is no evidence that defendants' right of occupancy was to be superior to that of plaintiff, or that the

latter's right was limited to his personal use, except casual remarks made by plaintiff that he would only need a room or two for himself and that he would not bring a second wife into the house. In that state of the record we do not believe that that portion of the judgment is sufficiently intelligible or certain. As we have seen, the evidence shows that both plaintiff and Etta, and later plaintiff, as well as defendants, were to remain on as usual as occupants of the property. One concrete way of expressing it might be that defendants own an undivided half interest in the property for plaintiff's life and the whole thereafter, and plaintiff owns an undivided half interest for his life, all by reason of a parol gift by plaintiff and Etta of a half of their life estate, but it has not been stated with certainty in the judgment, therefore, it must be reversed.

 Plaintiff claims that the court erred in imposing liens in favor of defendants on plaintiff's life estate. The court impressed a lien in favor of defendants for $2,100, for the improvements and for the half of the taxes paid by defendants. It is difficult to find any basis for that adjudication. If the basic theory is a parol gift followed by a detriment in reliance thereon, it would seem the detriment suffered should not be charged against the plaintiff-donor as a debt. Defendants-donees have received the property. Defendants cite no authority to support that part of the judgment, except cases holding that in equity the court may decide all the issues between the parties. That may well be true, but it does not mean that there does not have to be some basis in law or equity to decide such issues one way or the other. It is merely a rule of equity jurisdiction and the scope of the relief that may be granted.

 Finally, plaintiff complains of rulings on the admission of evidence. There was admitted the declaration of a homestead on the property by defendants shortly after the execution of the deed. It is true that such declaration, in itself, was not relevant, for it would not affect title, but as it was made with the consent and at the suggestion of Etta, it had some relevancy as indicating that a gift of the right to occupy the property was intended by the Greens and accepted by defendants.

 Evidence was admitted that no proceedings had been had by plaintiff to establish Etta's death pursuant to sections 1170-1175 of the Probate Code. We agree that it was irrelevant.

 The testimony by Mrs. Brown that she would not have made the improvements on the property if she had known

plaintiff had remarried was admissible. It had some relevancy on the subject of reliance by defendants, that is, that they relied upon the assurances that they could occupy the property without undue interference by plaintiff.

Judgment reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.