[Civ. No. 7216. Fourth Dist. Feb. 7, 1964.]

ANDREW ANDREOTTI, Plaintiff and Respondent, v. GUIDO ANDREOTTI, Individually and as Administrator With the Will Annexed, etc., et al., Defendants and Appellants.

Clifton A. Hix and Elizabeth Hix for Defendants and Appellants.

Dickenson, Sattinger & McKee and Richard A. McKee for Plaintiff and Respondent.

COUGHLIN, J.—This is an appeal from a judgment quieting title to certain real property.

In 1913, Joe Andreotti, a native of Switzerland, bought the property in question, which is a ranch or farm in Imperial Valley consisting of approximately 125 acres of land. Thereafter he, his wife, and his family, consisting of several sons and a daughter, worked and lived upon this ranch. The wife and one of the sons predeceased the events hereinafter related.

The defendant Guido Andreotti, an appellant herein, was the oldest son; lived on the ranch until 1935; moved away when he married; was then 29 years of age; and up to that time had helped farm the property for approximately 22 years. When Guido left, the plaintiff, Andrew Andreotti, who was the youngest son, then being about 20 years of age, worked and managed the ranch by himself, because all of the other relatives had moved away and his father's health was failing.

In the fall of 1936 Joe Andreotti, the father, went to Switzerland to settle a property matter; told Guido that he would return in six months; did not return; died in August 1944; and left a will devising all of his property to his remaining three sons and his daughter.

At the time the father left for Swizterland the plaintiff,

Andrew, was living upon and working the ranch; also was working two other ranches which he had rented, one on a sharecropper basis and the other for $15 an acre per annum; thereafter continued to live on and operate the Andreotti ranch; paid all of the expenses in connection therewith and, except as hereinafter noted, kept all of the proceeds therefrom; paid the taxes thereon, although the record at hand does not show the amount thereof; and also paid off two encumbrances against it. One of these encumbrances was a mortgage securing a loan in the sum of $2,000 payable to a man named Holt; was not known to the plaintiff until sometime after his father had left for Switzerland; was paid off in 1943; and thereupon was assigned to the plaintiff. The other encumbrance was a deed of trust securing a loan in the sum of $5,000 payable to the Federal Land Bank in semiannual payments of $250, commencing in 1937; was paid off in 1947; and was released by a reconveyance.

The plaintiff testified that he did not know whether the debts secured by these encumbrances were paid with money that he "made off" of the Andreotti "farm or some other farm." The checks given in payment of the February 1945 and July 1946 installments of the Federal Land Bank loan were entered in the plaintiff's books "as a credit to the bank and a debit to farming expense labeled 'rent.' " The plaintiff's bookkeeper testified that the aforesaid checks should have been posted to " 'land payment.' " There is no evidence showing bookkeeping entries with respect to the other payments on the indebtedness. The plaintiff refused to disclose whether in his income tax returns he had claimed these payments as rent.

In August 1948, which was the year following final payment on the Federal Land Bank loan, the plaintiff delivered to his sister and to the defendant Guido, respectively, checks in the sum of $500 and $1,000, each bearing the notation "Rent" in his handwriting; in December 1949, delivered to each of them, respectively, a check in the sum of $1,000 bearing the notation "Rent"; each year thereafter to and including 1957, delivered to them, respectively, a check in the sum of $500; and for the years 1959 through 1960 delivered to his sister alone a check in the sum of $500. It was stipulated that all of these payments were "noted on the plaintiff's records as rent or charged to rent."

In 1958 the defendant Guido sought a division of the property, and to this end instituted proceedings to probate his

father's will. Thereupon the plaintiff brought the instant quiet title action against Guido individually and as administrator with will annexed of his father's estate, his sister, and his brother, Aldo, who has been missing for many years and apparently is dead; alleged, in substance, that he had acquired title to the property by adverse possession for a period of over 20 years; and caused default judgments to be entered against his sister and Aldo. Guido contested the action, and from the judgment against him he appeals.

In the course of his examination, the plaintiff was asked the basis for his claim to the property, and he answered: "Well, I don't know how to explain it now, but after I paid the mortgages off, some of these papers that we looked over, well, will bear out that if I hadn't paid them off, no one volunteered to pay them off, everybody left the ranch and I was out there, I took it over, and when my dad left for Switzerland in 1936, he told me to take the ranch, take it over, and I made all the payments on it, I paid all the taxes, and if I hadn't paid off the second mortgage or the first mortgage, it would have been nobody's ranch, so I just figure it's my ranch, my property."

The court found that for more than 20 years the plaintiff had been "in actual exclusive possession" of the property, "claiming the same adversely against all persons and claiming to hold fee interest" therein; that he paid the taxes thereon during that period "from his own personal funds"; that the defendant Guido was not a cotenant of the plaintiff at the time of the commencement of the action; that neither the defendant Guido, the estate of Joe Andreotti, nor the latter's heirs, with the exception of the plaintiff, had any interest in the property at that time; and that the father, Joe Andreotti, had no interest therein since January 1, 1938.

The defendant contends that the evidence does not support these findings because there is no proof that the plaintiff's possession of the ranch was hostile or adverse; that the plaintiff's possession during his father's lifetime was with the latter's permission, and after his death as a cotenant with the defendant; and that there is no substantial evidence that the father or the defendant had notice that the plaintiff was claiming the property as his own. In reply, the plaintiff claims that his father made an oral gift of the property to him; that, in any event, he held possession thereof adversely to his father and all others under a claim of gift, thereby

acquiring title thereto prior to his father's death; that the defendant did not acquire any interest in the property under his father's will because the father had no title thereto at the time of his death; and, for this reason, the defendant did not become a cotenant with the plaintiff.

Primarily the plaintiff's argument is based upon a contention that his father's statement to him: "... to take the ranch, take it over" effected a parol gift of the property to him. In determining whether or not the testimony of the plaintiff relating to this statement justifies the conclusion that the father thereby intended to give the ranch to the plaintiff, it is necessary to review such testimony in context with other testimony and with undisputed facts in the case.

If the evidence supports the conclusion that the father, by his statement aforesaid, intended to make a gift to his son it was a gift *in praesenti* and not a promise to make a gift. ▇ Preliminarily it should be noted that the statute of frauds forecloses a gift of real property by a mere oral transfer. (Civ. Code, § 1091; *Husheon* v. *Kelley*, 162 Cal. 656, 660 [124 P. 231].) ▇ However, it now is established that where a parol gift of real property is made *in praesenti* pursuant to which possession thereof is given to and taken by the donee who, in reliance thereon, places valuable and permanent improvements upon the realty, makes substantial expenditures in connection therewith, or otherwise so acts in relation thereto as to make it unjust to deprive him of the property by reason of an imperfection in the mode of transfer, equity will not permit reliance upon the statute of fraud to defeat the intended gift. (*Green* v. *Brown*, 37 Cal.2d 391, 399 [232 P.2d 487]; *Husheon* v. *Kelley, supra*, 162 Cal. 656, 662; *Burris* v. *Landers*, 114 Cal. 310, 313-314 [46 P. 162].) ▇ Fundamentally, the rule as stated is based upon the equitable principle of estoppel. (*Green* v. *Brown, supra*, 37 Cal.2d 391, 399-400; *Kennedy* v. *Scally*, 62 Cal.App. 367, 373-374 [217 P. 96].) ▇ Its application requires proof not only of the transfer of possession of the subject property to the donee, but also of his receipt in reliance thereon of a detriment of a sufficient degree to make it unjust not to effect the attempted transfer of title to him. Where the monetary detriment suffered by the donee does not exceed the benefit to him of the use of the land without charge or rental, and no other circumstances of hardship are shown, the basis for an estoppel does not exist. (*Green* v. *Brown, supra*, 37 Cal.2d 391, 400; *Burris* v. *Landers, supra*, 114 Cal. 310, 314; *Kennedy* v. *Scally, supra*, 62 Cal.App. 367, 373.)

■ To establish a parol gift of real property the proof thereof must be clear and convincing; but the application of this rule to the evidence in a given case is the function of the trial court; and its determination in the premises will be accepted on appeal unless, from all of the circumstances surrounding the transaction as disclosed by a review of the entire record, its conclusion clearly is unwarranted. (*Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7 [147 P.2d 583]; *Alpha Stores, Ltd.* v. *Croft*, 60 Cal.App.2d 349, 354 [140 P.2d 688]; *Kennedy* v. *Scally, supra*, 62 Cal.App. 367, 373.)

■ In the case at hand, the trial court did not find expressly that Joe Andreotti, the father, gave or intended to give his ranch to the plaintiff. Any implied finding to this effect, upon a consideration of the whole record herein, is not supported by substantial evidence. Although the plaintiff testified that his father, at the time the latter went to Switzerland, told him to take over the ranch, in response to a previous question whether, at that time, his father "gave you permission to remain on the land and farm it" he answered "Yes"; in February 1943 he took an assignment of the Holt mortgage instead of a release and satisfaction of it which, without explanation to the contrary, demonstrates his belief that title to the property was in his father, who then was alive, and not in himself; in February 1945 and in July 1946 he charged the payments made upon the Federal Land Bank loan to rent indicating an intent to satisfy an obligation to pay rent by making these payments; and upon completing the payments on that loan, made annual payments to the defendant and to his sister which were charged to rent, evidencing a belief that they had an interest in the property occupied by him. The plaintiff testified that even though some of the checks evidencing such payments bore the notation "Rent," and although all of them were charged to rent on his books, they were gifts. By way of explanation and in substantiation of this testimony, his counsel suggests that the bookkeeping entries do not establish unequivocally that the plaintiff held the property as a cotenant with his brother and sister, but "could equally well show a practice of either bad bookkeeping or a desire on the part of his bookkeeper to avoid taxes." However, the plaintiff knew the meaning of the term rent because in 1936 he rented a ranch and paid $15 an acre per annum rental therefor. On the check issued to the defendant in August 1948 he entered in his own handwriting a notation "Rent on Redwood 36"—the term "Redwood

36'' identifying the subject property; on the check to his sister the notation ''Rent Redwood 36''; and on the checks in 1949 to both the defendant and his sister the notation ''Rent.'' When asked how he happened to write the term ''Rent'' on the checks bearing this notation, he answered: ''I don't know.'' The testimony and explanation offered in contradiction of the rent notations upon the subject checks and of the entries in his books with respect thereto do not meet the requirements of substantial evidence. (*Fewel & Dawes, Inc.* v. *Pratt*, 17 Cal.2d 85, 89 [109 P.2d 650]; *Estate of Bishop*, 209 Cal.App.2d 48, 53-54 [25 Cal.Rptr. 763].) The plaintiff's conduct with respect to the subject property, during the time he was in possession thereof, refutes the theory of an oral gift. Furthermore, the gist of the testimony relied upon as proof of a gift establishes the contrary; is contained in that part thereof where the plaintiff says: ''If I hadn't paid off the second mortgage, or the first mortgage, it would have been nobody's ranch, so I just figure it's my ranch, my property''; relates a claim to the property based upon payment of the mortgages; and is not compatible with ownership under a preexisting gift. In the light of the whole record it may not be inferred that the statement of the father to the plaintiff to take over the property was intended by the former or believed by the latter to effect a gift.

 Under the rules heretofore noted, the plaintiff may not claim title under an oral transfer unless he shows a detriment resulting from his entry into possession under the claimed gift which exceeded the benefit accruing from his occupancy. The evidence does not establish such. Although the amount paid by the plaintiff on the encumbrances is shown, the amount of taxes that were paid is not shown, and there is no proof of the reasonable rental value of the property. The defendant's attempt to ascertain whether there were such benefits was prevented by the plaintiff's objection to an inquiry with respect thereto, which was sustained by the trial court. Either the trial court did not believe that the oral gift theory was in issue or erred in foreclosing an inquiry into matters essential to the existence of an estoppel. In any event, the evidence is not sufficient to support an implied finding that the detriment to the plaintiff resulting from the transaction in question exceeded the benefit received by him.

The plaintiff's contention that his entry into possession was under an oral gift must be rejected. The only reasonable conclusion deducible from the evidence was that the entry into possession was permissive.

To establish the plaintiff's further contention that he acquired title by adverse possession prior to his father's death, he was required to show that his occupancy for the statutory period prior thereto was under a claim of title hostile to that of his father. (*Huntley* v. *San Francisco Savings Union*, 130 Cal. 46, 48 [62 P. 255]; *Rix* v. *Horstmann*, 93 Cal. 502 [29 P. 120].) There is no such showing. Upon the father's death title to the ranch vested, subject to administration, in the plaintiff, the defendant Guido, and their sister and brother, as cotenants. (Prob. Code, § 300; *Noble* v. *Beach*, 21 Cal.2d 91, 94 [130 P.2d 426].) As the plaintiff occupied the land prior to the death of his father with permission of the latter, there being no showing to the contrary, it must be assumed that his continuing occupancy thereafter, until he learned that his father had died, was under the belief that he had permission to do so rather than under a claim of right. At the time he learned his father had died, which was in 1945, he was a cotenant of the property and entitled to possession thereof as such. To subsequently acquire title thereto by adverse possession it was necessary, among other things, that he thereafter occupy the property under circumstances constituting reasonable notice to his cotenants that his occupancy was hostile to their title, and that he claimed it as his own. (*Dimmick* v. *Dimmick*, 58 Cal.2d 417, 421-422 [24 Cal.Rptr. 856, 374 P.2d 824].) If the plaintiff was claiming the property as his own after his father's death, the circumstances accompanying his occupancy were not such as to impart notice of that claim to the defendant. Instead, it appears that the plaintiff acknowledged the interest of his brother and his sister in the ranch by paying them rent. (See *Johns* v. *Scobie*, 12 Cal.2d 618, 625-626 [86 P.2d 820, 121 A.L.R. 1404].) The plaintiff claims that the foregoing rule does not apply to the instant situation because, at the time of his father's death, he did not enter into possession as a cotenant with his sister and brothers, and cites the decisions in *Akley* v. *Bassett*, 189 Cal. 625, 642 [209 P. 576], and similar cases, in support of his position. However, his contention in this regard is based upon the premise that his father had made an oral gift to him, or that he had acquired title by adverse possession in reliance upon an attempted gift. As heretofore shown, this is a false premise. There was neither a gift nor an attempted gift. The plaintiff's possession prior to his father's death was permissive

and not hostile. The rule in the cited case has no application to the case at bar.

As the evidence does not support a finding that the plaintiff occupied the property under circumstances giving notice of any claim thereto adverse to the defendant or his sister, it is not necessary that we consider the seeming insufficiency of the findings as made to support the judgment.

The judgment is reversed.

Griffin, P. J., and Brown (Gerald), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 1, 1964.